**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jerome THOMAS, Defendant–Appellant.**

**No. 94–5749.**

United States Court of Appeals,
Fourth Circuit.

Argued April 12, 1995.

Decided May 23, 1995.

---

**146**

**ARGUED:** Robert Clarke VanDervort, Robinson & McElwee, Charleston, WV, for appellant. Michael O. Callaghan, Asst. U.S. Atty., Charleston, WV, for appellee. **ON BRIEF:** Rebecca A. Betts, U.S. Atty., Charleston, WV, for appellee.

Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WARD, District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge WIDENER wrote the opinion in which Chief Judge ERVIN and Judge WARD concurred.

## OPINION

WIDENER, Circuit Judge:

Jerome Thomas, Jr. appeals from his conviction on three counts of an indictment charging him with conspiracy to possess with intent to distribute and to distribute cocaine base and heroin, 21 U.S.C. § 846, and possession with intent to distribute both cocaine base and heroin, 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. On appeal, Thomas alleges violations of his constitutional right to a speedy trial and of the Speedy Trial Act, insufficiency of the evidence, and several trial and sentencing errors. We affirm the conviction and Thomas's sentence in all respects.

In the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the facts of this case are as follows. In July 1990, in exchange for Thomas's providing bail and a lawyer in an Ohio felony case, Rodney Merritt began assisting Thomas in drug trafficking in West Virginia. Thomas, Merritt, and three other people drove to West Virginia in two automobiles. They brought with them 18 to 20 ounces of cocaine base and some powdered heroin. Merritt and Thomas packaged the heroin at the apartment of Betty Lou White. Thomas and Merritt gave some heroin to Donald Megginson, and Thomas informed Megginson that in the future Megginson would be dealing with Merritt. Merritt and Thomas sold two ounces of cocaine base to Sam Valentine in two separate transactions, for $1,000 each. Thomas then instructed Merritt to take the money to the bank and exchange it to be rid of any possible marked money.

Thomas became suspicious when Megginson was arrested and released shortly after Thomas and Merritt supplied him with heroin. He left Merritt with the Charleston operation and left town. By telephone, Thomas instructed Merritt to have Megginson give his remaining heroin to Charles Lee Smith for distribution, and Merritt did so.

On learning that Merritt was staying in an expensive hotel, Thomas returned to Charleston. He and others found Merritt and two women in an apartment, attempted to use a handgun and other force to enter the apartment, threatened to kill Merritt, and severed a finger of one of the women in the apartment in a shoving match at a door.

Merritt was arrested and negotiated a plea agreement in exchange for his cooperation in the investigation of Thomas's activities. Merritt informed police of the location of some of Thomas's cocaine and heroin, and 70 grams of cocaine base and an amount of heroin were recovered at that location.

On November 21, 1990, law enforcement personnel arranged a monitored telephone call from Merritt to Smith. Merritt's relation of the conversation is that Smith told Merritt that Thomas wanted his drugs back and Merritt told Smith that he (Merritt) was staying at Cutlip's Hotel.[1] When Thomas did not appear at Cutlip's, Merritt was brought by officers Hart and Crawford to a nearby Motel 6. There, Merritt spotted Thomas and Terryonto McGrier, Thomas's indicted coconspirator, in a car driven by Thomas. After some staring between Merritt and McGrier, McGrier began firing at Merritt and officers Hart and Crawford. The officers returned fire, puncturing one of Thomas's tires. No one was injured. Thomas and McGrier drove away with Hart and Crawford and a marked police car in pursuit. Thomas veered off the road, striking and killing a bicyclist. Several miles after he had killed the bicyclist, Thomas wrecked his car and both occupants were arrested.

On November 27, 1990, while Thomas was being held on several state charges, a federal criminal complaint was filed by an officer with the Metropolitan Drug Enforcement Network, charging Thomas with conspiracy to distribute cocaine base and heroin. An arrest warrant was secured in order to file a

detainer with the West Virginia state authorities. Sometime in December 1990, a Deputy U.S. Marshal advised Thomas that a federal complaint had been filed against him and that a detainer was lodged with the West Virginia authorities. Thomas was convicted on several state charges on August 13, 1992, at which point Thomas retained a lawyer, Collias, to investigate the federal charges against him. Thomas testified that he did not tell Collias he wanted a speedy trial. Collias testified that he advised the Assistant United States Attorney that Thomas desired to be charged sooner rather than later, but that he did not demand a speedy trial on behalf of Thomas. In March 1993, Thomas was given a document asking if he wished to have a speedy trial, but he did not express such a preference. In April 1993, in response to a second such document, Thomas stated that he did not wish to have a speedy trial. Thomas was indicted on a single conspiracy count on August 10, 1993, and on January 13, 1994, he demanded a speedy trial. On February 23, 1994, Thomas was first arraigned. On April 21, 1994, Thomas was arraigned on three counts of a superseding indictment, and he was tried and convicted on all three counts.

## I.. Speedy Trial

Thomas claims that the government violated his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and the Sixth Amendment by failing to indict him for more than two years after the issuance of the criminal complaint, arrest warrant, and federal detainer in November and December 1990.[2] We will address these issues in turn.

### A. Speedy Trial Act

18 U.S.C. § 3161(b) requires that, "[a]ny information or indictment charging an individual with the commission of an offense

---

1. The tape recording of this conversation was erased by law enforcement shortly after it concluded, when Thomas did not appear at Cutlip's. Thomas alleges, and Smith testified, that the conversation contained no reference to Thomas at all but instead involved setting up a sale to Smith of cocaine so that Merritt could get some money to leave town.

2. Thomas argues that the indictment on which he was convicted contains the same charges as the criminal complaint filed in November 1990. This is not the case, because the 1990 complaint named only the conspiracy allegation, and thus the only issue in this discussion is whether count one of the indictment, the conspiracy count, must be dismissed.

shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." In *United States v. Lee*, 818 F.2d 302 (4th Cir.1987), we held on procedural facts materially indistinguishable from those in the instant case that "section 3161(b) requires an arrest as well as a charge—and ... the arrest must be a federal arrest upon a federal charge." 818 F.2d at 305; see also *United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir.1982) ("[S]ince there was no federal arrest of the defendants and no taking of them into federal custody until after they were indicted by a federal grand jury, there was no violation of the Speedy Trial Act in this prosecution.").

▇▇▇ Thomas argues that under our decision in *United States v. Summers*, 894 F.2d 90 (4th Cir.1990), the time limit in the Speedy Trial Act is triggered when formal charges have been filed against the defendant. 894 F.2d at 91. But that is not what *Summers* holds. It holds that the Act is not triggered unless formal charges have been filed and are accompanied by an arrest. In *Lee*, a federal criminal complaint, a federal arrest warrant, and a federal detainer were all filed between September 17 and 23, 1985, while the defendant was taken into federal custody briefly, for a grand jury appearance, on November 21, 1985, and indicted on December 20, 1985. See 818 F.2d at 303, 304. We held that the Act was not triggered until December 20. See 818 F.2d at 305. Thus, under our holding in *Lee*, a criminal complaint coupled with an unexecuted arrest warrant and a federal detainer do not constitute formal charges within the meaning of *Summers*. *Summers*, indeed, explicitly was made consistent with *Lee*. 894 F.2d at 91 n. 1. We hold that the Speedy Trial Act was not implicated in this case until Thomas was either taken into federal custody on federal charges or indicted on those charges.

▇▇▇ Defendant next argues that because both state and federal prisoners were detained in the Kanawha County Jail, where Thomas was brought on November 21, 1990, and because the federal arrest warrant issued prior to the state arrest warrant (although both issued after the defendant was taken into custody by state officers on the state charges), it is unclear whether Thomas was in federal or state custody in late 1990. However, Thomas cites no authority for the proposition that this scenario is pertinent to a Speedy Trial Act claim, and we have found none. Moreover, it is undisputed that Thomas was arrested by state officers on state charges on November 21, 1990, and that there was no joint or parallel federal investigation of Thomas prior to that time.

In *Iaquinta*, we held that a joint state-federal investigation leading to an arrest by state officers on state charges with federal officers present, and the consequent taking of the defendants into state custody, was a state arrest and not a federal arrest, see 674 F.2d at 261–62, and thus that the Speedy Trial Act was not implicated until the defendants were taken into federal custody. It is clear in this case, then, that Thomas was arrested and taken into custody by state authorities on state charges, notwithstanding that the federal warrant issued prior to the state warrant. Thus the Speedy Trial Act was not implicated until the issuance of the federal indictment in August 1993.[3]

### B. Sixth Amendment

▇▇▇ To establish a violation of the Sixth Amendment right to a speedy and public trial, a defendant must show first that the Amendment's protections have been triggered by "arrest, indictment, or other official accusation." *Doggett v. United States*, —— U.S. ——, ——, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992). The defendant must then show that on balance, four separate factors weigh in his favor: "whether the delay before trial was uncommonly long, whether the government or the defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett*, —— U.S. at ——, 112 S.Ct. at 2690 (paraphrasing the four-factor test announced in *Barker v. Win-*

---

3. Thomas also argues that the time period between his indictment on August 10, 1993 and his trial violated the Speedy Trial Act. No evidence supports this contention, and we reject it.

*go,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). The district court found that the Amendment was triggered by the events of November and December 1990, that the delay was uncommonly long, that the government had asserted plausible reasons for the delay, that Thomas had failed to assert his right to a speedy trial in due course and had expressly not demanded a speedy trial in April, 1993, and that although Thomas was presumptively prejudiced by the delay, there was no actual prejudice. The district court then denied Thomas' motion to dismiss the indictment. See *United States v. McGrier,* 848 F.Supp. 649, 653–55 (S.D.W.Va. 1994).

■ We agree with the district court that the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment under *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (holding that a federal detainee against whom only a Florida arrest warrant and detainer were filed in mid–1960

had a constitutional right upon demand to have Florida make a diligent good-faith effort to try him); see also *Smith v. Hooey,* 393 U.S. 374, 377–83, 89 S.Ct. 575, 576–80, 21 L.Ed.2d 607 (1969).[4] So Thomas had a Sixth Amendment right to a speedy trial as of that time.

■ In weighing the four factors set out above, we also agree with the district court that the delay between Thomas's arrest or formal accusation and his indictment was uncommonly long. See *Doggett,* —— U.S. at —— n. 1, 112 S.Ct. at 2691 n. 1 ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.... [I]n this threshold context,'presumptive prejudice' ... simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."); *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693. A *Barker* analysis in such a case should be made even where, as here, Thomas cannot establish any instance of actual prejudice resulting from the delay.[5]

---

**4.** We note that both *Dickey* and *Smith,* unlike the instant case, involved situations where the accused repeatedly demanded a speedy trial and was refused. See *Dickey,* 398 U.S. at 32–35, 36, 37–38, 90 S.Ct. at 1566–67, 1568, 1568–69; *Smith,* 393 U.S. at 383, 89 S.Ct. at 579–80 ("Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the ... court for trial."). *Dickey* is the only federal case of which we are aware in which an individual has successfully invoked his constitutional right to a speedy trial prior to either arrest or indictment, implicitly assuming that the complaint, the arrest warrant, and the detainer were sufficient to constitute either formal accusation or arrest for the purposes of the Amendment.

Several subsequent Supreme Court cases have suggested that the Sixth Amendment analysis does not begin until the individual is arrested or otherwise detained or until formal charges are filed. See *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.") (citation omitted); *Barker,* 407 U.S. at 520, 92 S.Ct. at 2187 ("[D]elay between *arrest* and punishment may have a detrimental effect on rehabilitation.") (emphasis added); *United States v. Marion,* 404 U.S. 307, 315, 92 S.Ct. 455, 460, 30 L.Ed.2d 468 (1971) (stating that no Supreme Court opinion supports the

proposition, and no court of appeals has ever found, that a conviction should be reversed or an indictment dismissed "solely on the basis of the Sixth Amendment's speedy trial provision where only pre-indictment delay was involved"); *Marion,* 404 U.S. at 320, 92 S.Ct. at 463 ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.").

It is unclear to us whether the Court found an arrest or a formal charge in *Dickey.* Because the Court in *Dickey* did not explicitly rest its holding on the defendant's repeated demands for speedy trial, so far as we are concerned, *Dickey* is still controlling on these facts. However, we do not here decide either that the criminal complaint against Thomas constituted institution of formal charges or that the unexecuted arrest warrant or the detainer constituted an arrest. We also need not decide whether subsequent decisions of the Court have narrowed somewhat the broad holding of *Dickey.*

**5.** Thomas claims that the destruction of the tape recording of Smith's conversation with Merritt is an instance of actual prejudice. This argument is without merit because the tape was erased immediately after the recording in November 1990. Thus, even if the erasing of the tape was prejudicial, it was in no way connected with the government's delay in prosecuting Thomas and is not an instance of actual prejudice for Sixth

**150**

Thus, the length of the delay and the presumptive inquiry being required favor Thomas.

■ It is undisputed that Thomas did not assert his right to a speedy trial until January 1994 and that he explicitly declined that right in April 1993. Although Thomas's attorney (Collias) may have expressed his preference to have the trial "sooner rather than later" in October 1992, he did not assert any speedy trial right on behalf of Thomas and testified that he did not. Thomas, indeed, also testified that he did not tell Collias that he wanted a speedy trial. This testimony bolsters the fact that given several opportunities to specifically invoke the right thereafter, Thomas and his counsel declined to do so. Failure to assert the right to a speedy trial, and even the explicit waiver of that right, is not dispositive of a Sixth Amendment speedy-trial claim, see *Barker,* 407 U.S. at 528–30, 92 S.Ct. at 2191–92, but it is a factor in determining whether the defendant's speedy-trial right has been violated, see *Barker,* 407 U.S. at 530, 531–32, 92 S.Ct. at 2192, 2192–93, and "the failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Thus, the assertion-of-right factor weighs heavily against Thomas' claim of a speedy-trial violation.

■ Finally, we agree with the district court that the government had plausible reasons for the delay. The district court cited as the government's reasons Thomas's failure to assert his right when asked, the need to decide what charges to bring against Thomas, whether or not to try Thomas and McGrier together, the need to discover what Thomas's state sentence was going to be,[6] and how to resolve a *Bruton* problem with respect to a post-accusation statement of McGrier inculpating Thomas. See *McGrier,* 848 F.Supp. at 655.

We agree that these are plausible reasons for delay, although we do not decide that they, of themselves, reach the level of reasonable diligence, which would altogether preclude a Sixth Amendment speedy-trial claim absent a showing of specific prejudice to Thomas's defense. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693 ("[I]f the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense."). We also note an obvious additional reason for the delay: The need to allow Thomas to be prosecuted by the State without interference by the federal government. We find this to be an obvious reason for delaying Thomas's federal prosecution, at least until August 1992. To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw

Amendment purposes. Because the government did not act intentionally to harass or prejudice Thomas, we reject Thomas' Fifth Amendment claim of Due Process violations.

6. Thomas argues that this is an invalid reason, because the Supreme Court has stated, in *Smith,* that the government should not wait until another sentence is ended before prosecuting where to do so might eliminate "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving." 393 U.S. at 378, 89 S.Ct. at 577. However, this argument would not apply in a case where the defendant is in custody on state charges but has not yet been sentenced: if the government must prosecute the defendant without knowing what his punishment will be at the state level, it will be unable to consider the

state's punishment in determining what charges to bring to make the totality of the state and federal convictions commensurate with the crime. Even in this case, for example, the government may have been justifiably waiting, at least until August 1992, to see if the State's punishment would satisfy the government's penal concerns without any further prosecution by the government itself.

Since the government did not wait for Thomas's state sentence to expire but indicted Thomas in August 1993, only a year after the State completed its prosecution, and issued a writ of habeas corpus *ad prosequendum* in February 1994, six months after his indictment and less than one month after he first requested a speedy trial, the government did not in this case run afoul of *Smith.*

parallel federal and state prosecutions into confusion and disarray.

■ Although we do not here hold that a pending state prosecution in any sense tolls the running of the Sixth Amendment period of delay, we are of opinion that it is a factor in the government's favor, to be weighed in considering the length of the delay, the prejudice to the accused, and the accused's assertion of right. Where, as here, the accused is indicted within a year of the conclusion of the state proceedings and repeatedly ignores or declines the government's offer of a speedy trial during that interim, we are of opinion that the *Barker* analysis favors the government, and the Sixth Amendment claim should fail. We thus affirm the district court's decision to deny Thomas's Sixth Amendment claim.

## II. Other Issues

Thomas raises several additional issues on this appeal. These issues merit no more than brief discussion, and we will address them in turn.

■ Thomas argues that the government intimidated and coerced Betty Lou White, who had originally made statements favorable to Thomas, into testifying against Thomas at trial. This argument is without merit. The government did no more than to attempt to sift out the inconsistencies between Miss White's statements and the other evidence and to ensure that she fully understood her obligation to testify truthfully. Although a defendant has a right to unhampered testimony in his defense, see *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir.1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992), he has no right to perjured testimony. We agree with the district court that "the government's actions were appropriate and legal."

Thomas alleges that the admission of evidence regarding the events of November 21, 1990 was erroneous and highly prejudicial, that the evidence does not support his conviction, that the district court erred in attributing amounts of drugs to his offense under U.S.S.G. § 1B1.3, and in enhancing his sentence under U.S.S.G. § 3C1.2 (reckless endangerment during flight) and U.S.S.G. § 3B1.1 (role in the offense), as well as that the Sentencing Guidelines violate the Fifth and Eighth Amendments to the Constitution as applied to him. We have reviewed the record, and we find these challenges to be without merit.

For the foregoing reasons, Thomas's conviction and sentence are in all respects

*AFFIRMED.*