UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 98-4094

MICHAEL ERROL WILSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                             No. 98-4181

ERNESTINE JUNIOR THOMAS, a/k/a
Ernest Thomas,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-97-39-BO)

Submitted: January 29, 1999

Decided: February 19, 1999

Before HAMILTON, WILLIAMS, and MOTZ, Circuit Judges.

_____


Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gregory John Ramage, Raleigh, North Carolina; Freddie Lane, Jr., THE LANE LAW FIRM, P.A., Raleigh, North Carolina, for Appellants. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Errol Wilson and Ernestine Junior Thomas were tried together and each was convicted by a jury on one count of conspiracy to manufacture, distribute, and possess with intent to distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. § 846 (1994). They now appeal their convictions.

On February 25, 1997, a federal grand jury indicted Wilson, Thomas, and three others on one count of conspiracy to manufacture, distribute, and possess with the intent to distribute cocaine and cocaine base ("crack").[1] Thomas was arrested on February 28, 1997, and was detained after a detention hearing. When the jury was unable to reach a unanimous verdict, Thomas' first trial ended in a mistrial on May 28, 1997.

Michael Wilson was not arrested until June 25, 1997. On July 22, 1997, the Government filed a motion to continue Thomas' trial so both defendants could be tried at the same time. Over Thomas' objections, the court granted the Government's motion. Again Thomas

_____

[1] The indictment also charged Thomas and two others in a forfeiture count.

2

objected and moved to dismiss the indictment based on the continuance of his retrial, which the court denied. Meanwhile, Wilson filed a motion for a continuance to allow him to file pretrial motions, which the court granted over Thomas' objections.

The trial began on October 27, 1997. The Government produced three cooperating witnesses to testify against Wilson. Pursuant to their plea agreements, each of these witnesses had previously pleaded guilty to conspiracy to distribute cocaine base and had agreed to testify truthfully if called by the Government. In exchange, the Government promised these witnesses that it would advise the court about the extent of their cooperation, including whether the Government considered these witnesses to have provided substantial assistance to the Government. Wilson concedes that these witnesses' testimony, taken together, alleged that he had participated in cocaine base transactions in North Carolina from 1993 to 1995. Wilson denied any involvement in drug trafficking.

The Government introduced ten cooperating witnesses to testify against Thomas. Again, most of these witnesses testified pursuant to plea agreements. Thomas concedes that, taken in the light most favorable to the Government, the sum of these witnesses' testimony stated that he had trafficked in cocaine base form 1990 to 1996. Thomas argues, however, that the evidence was insufficient to support his conspiracy conviction.

The jury found Wilson and Thomas guilty. The court sentenced Wilson to 260 months in prison and Thomas to 360 months in prison.[2] In this consolidated appeal, Wilson and Thomas jointly assert that the district court erred by admitting the testimony of the Government's cooperating witnesses. The remaining issues are raised solely by Thomas.

Admission of Testimony from Government's Cooperating Witnesses

Wilson and Thomas both challenge the district court's admission of testimony from government witnesses who testified pursuant to

_____

[2] The court severed the trial and verdict on asset forfeiture.

plea agreements under which they agreed to cooperate in exchange for potentially lower sentences. Because Appellants failed to raise this issue in the district court, this court reviews it for plain error. See United States v. Olano, 407 U.S. 725, 732 (1993).

Specifically, Wilson and Thomas argue that the promises given by the Government in exchange for the witnesses' testimony violated 18 U.S.C. § 201(c)(2) (1994). This statute prohibits offering anything of value to a witness in exchange for testimony. Every circuit that has addressed this argument has rejected it. See United States v. Singleton, No. 97-3178, 1999 WL 6469 (10th Cir. Jan. 8, 1999) (en banc); United States v. Haese, 162 F.3d 359, 366 (5th Cir. 1998); United States v. Ware, 161 F.3d 414, 418-25 (6th Cir. 1998) (detailed discussion). We find that the district court did not commit plain error by admitting the testimony of the Government's cooperation witnesses.

Trial Court's Intervention in the Trial Process

Thomas charges that he was denied a fair trial because the district court acted as a prosecutor when questioning witnesses and reprimanded defense counsel. Neither of these claims has merit.

Despite his claim that the record is "replete" with instances of the judge acting as prosecutor, he only cites to two instances where the judge questioned witnesses. In each case, counsel failed to object to the judge's questioning. Under Federal Rule of Evidence 614(c), objections to judicial questioning "may be made at the time or at the next available opportunity when the jury is not present." The failure of counsel to object during the trial to judicial questioning of a witness precludes appellate review, see United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994), unless the judge's comments are so prejudicial that they deny a litigant a fair and impartial trial, see Stillman v. Norfolk & W. Ry. Co., 811 F.2d 834, 839 (4th Cir. 1987). We find that the circumstances here do not meet this standard.

Thomas also argues that the judge's remarks to defense counsel deprived him of a fair trial. During opening arguments, for example, defense counsel characterized the Government's witnesses as the "scum of the earth," and the court told the jury to disregard the com-

4

ment. Counsel also stated that the jury should consider that Thomas pleaded guilty and served his time and had been released. The judge interrupted, stating that this was a double jeopardy argument which did not apply here and was a mischaracterization of the law. Rule 611 of the Federal Rules of Evidence authorizes the trial court to exercise control over the presentation of evidence. We find that the court's conduct during opening arguments did not exceed the bounds of its authority.

Furthermore, the court did not prejudice Thomas when it admonished defense counsel about questioning witnesses concerning their criminal records. Under Federal Rules of Evidence 609, counsel may impeach the credibility of a witness through evidence of prior felony convictions or convictions involving dishonesty or false statements. In one instance, the court stopped counsel when he attempted to ask the witness more than just whether he had been convicted. The court merely required counsel to comply with the Rules of Evidence. In another instance, the judge stopped counsel from continuing to question a witness about how many times he had been convicted of a felony. We find that Thomas was not prejudiced because counsel had already elicited from this witness that he had numerous convictions.

Finally, Thomas' claims that the court's interruptions during closing arguments unfairly prejudiced him are meritless. We have reviewed the transcript and conclude that the court's intervention was appropriate and did not unfairly prejudice Thomas.

Admissibility of the Statements of a Deceased Co-Conspirator

Over Thomas' objections, the district court admitted into evidence statements made by Thomas' deceased half-brother and co-conspirator, Johnny Branch. Specifically, on cross-examination of two witnesses, the Government elicited testimony that Branch told a witness that Thomas was his cocaine supplier, and that Branch gave another witness drugs because he (Branch) planned to go somewhere with Thomas. Thomas alleges that this evidence was inadmissible hearsay and thus violated the Sixth Amendment's Confrontation Clause. This claim is meritless.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that "[a] statement is not hearsay if . . . [it] is offered against a party and

5

is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." To qualify for the Rule 801(d)(2)(E) exception, "There must be evidence that there was a conspiracy involving the declarant and the [defendant]", and that the co-conspirator made the statement "during the course and in furtherance of the conspiracy." Bourjaily v. United States, 483 U.S. 171, 175 (1987). Contrary to Thomas' assertions, there is evidence independent of Branch's statements showing that he was involved in the conspiracy with Thomas. Because Branch's statements constituted statements of a co-conspirator made during and in furtherance of the conspiracy, they qualified under the Rule 801(d)(2)(E) as exceptions to the hearsay rule.

Denial of Thomas' Speedy Trial Motions

Thomas argues on appeal that the Speedy Trial Act, 18 U.S.C. § 3161 (1996), was violated because more than seventy days elapsed between his mistrial and retrial. Because Thomas failed to raise this issue in his pretrial motions, however, the issue is waived. See 18 U.S.C. § 3162(a)(2) (1996).

Next, Thomas claims that the delay between his mistrial and retrial violates his Sixth Amendment right to a speedy trial. To show that a delay in disposing of charges violated a defendant's Sixth Amendment right to a speedy trial, a court considers four factors: (1) whether the delay was uncommonly long; (2) whether the government or the defendant was more responsible for the delay; (3) whether, in due course, the defendant asserted his right to a speedy disposition; and (4) whether the defendant suffered any prejudice due to the delay. See United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). If the delay is not uncommonly long, there is no Sixth Amendment violation. See Doggett v. United States, 505 U.S. 647, 652 (1992).

According to Thomas, there was a forty-six-day delay. The actual time between the mistrial and retrial was five months. Generally, courts have concluded that a year constitutes undue delay. See id. at 652 n.1. Consequently, there was no Sixth Amendment violation.

Denial of Fed. R. Crim. P. 29 Motion

Thomas claims that the district court erred in denying his Fed. R. Crim. P. 29(c) motion for judgment of acquittal, because the evidence

6

was insufficient to support his conviction. Thomas' conviction must be sustained if, viewed in the light most favorable to the Government, there is substantial evidence to support it. See Glasser v. United States, 315 U.S. 60, 80 (1942). "In reviewing the sufficiency of the evidence, [the Court is] not entitled to weigh the evidence or to assess the credibility of witnesses, `but must assume that the jury resolved all contradictions . . . in favor of the Government.'" United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1993) (alteration in original) (quoting United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1989)).

In order to prove conspiracy to possess cocaine base with intent to distribute, the Government must prove: (1) the existence of a conspiracy; (2) that the defendant knew of the conspiracy; and (3) that the defendant voluntarily became part of the conspiracy. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1997) (en banc). The totality of the circumstances shown by the Government may suffice to infer the agreement necessary for a conspiracy conviction. See id. at 857-58.

Viewed in the light most favorable to the Government, the evidence in this case showed that Thomas conspired with many people to distribute cocaine and crack cocaine from 1991 to 1996. The evidence showed that, both before and after Johnny Branch's death, Thomas sold crack cocaine to customers who also purchased it from his brother. Chris Woods and James Strickland each bought crack from Thomas at his brother's home while Branch was still alive. Branch referred both of these customers to Thomas for larger quantities of drugs. Greg Rogers bought crack cocaine from both brothers, and Thomas later told him to buy drugs from Woods. After Branch was murdered, Thomas asked Strickland for his brother's bottle of crack. Branch also told Woods and Hughroy Roberts that Thomas supplied him with cocaine. Jeff Sharper bought crack from Thomas, Branch, and other co-conspirators during the same time frames. We find that this evidence was sufficient to support Thomas' conspiracy conviction.

Conclusion

For these reasons, we affirm Wilson's and Thomas' convictions. We dispense with oral argument because the facts and legal conten-

7

tions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8