PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellee,*

v.                                          No. 04-4260

CURTIS DELMONT WOOLFOLK,
               *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-03-79-NKM)

Argued: December 3, 2004

Decided: March 2, 2005

Before WILLIAMS and MICHAEL, Circuit Judges,
and Henry F. FLOYD, United States District Judge
for the District of South Carolina,
sitting by designation.

Remanded by published opinion. Judge Williams wrote the opinion,
in which Judge Floyd concurred. Judge Michael wrote a separate
opinion concurring in the judgment and concurring in part.

## COUNSEL

**ARGUED:** Roy David Bradley, Madison, Virginia, for Appellant.
William Frederick Gould, Assistant United States Attorney, OFFICE
OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia,

for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, CIRCUIT JUDGE:

Curtis Delmont Woolfolk pleaded guilty to one count of possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999), while reserving the right to challenge his prosecution as violating the Speedy Trial Act, 18 U.S.C.A. § 3161(b) (West 2000) and his Sixth Amendment right to a speedy trial. The district court rejected both of Woolfolk's claims, and, for the following reasons, we remand the case to the district court for further proceedings. We remand for further consideration of whether Woolfolk was subject to "any restraint resulting from federal action" that triggered the Speedy Trial Act's provisions. *United States v. Lee*, 818 F.2d, 302, 305 (4th Cir. 1987). Because of the factual uncertainty regarding Woolfolk's detention, we also remand the case for a full consideration of Woolfolk's Sixth Amendment claim under *Barker v. Wingo*, 407 U.S. 514 (1972).

I.

On December 15, 2002, Detective David Harris was assigned to a sobriety checkpoint in downtown Charlottesville, Virginia. At approximately 2 a.m., a 1991 Lincoln approached the checkpoint and turned into another lane in an effort to avoid it. Detective Harris began a pursuit of the vehicle and effected a stop. Harris approached the car and observed that the driver of the vehicle, Woolfolk, appeared to be intoxicated. Harris also had personal knowledge that Woolfolk was involved in drug activities. During the traffic stop, several Charlottesville residents who had been standing nearby watching the stop approached Woolfolk's vehicle and attempted to gain entry. Harris heard Woolfolk tell one such individual that "it[']s between the seats." (J.A. at 6.) Woolfolk was arrested for driving under the influ-

ence. Following the arrest, Harris performed a search of the vehicle and found eight grams of crack cocaine in the center console.[1]

On December 18, 2002, the United States (the Government) filed a criminal complaint against Woolfolk in the United States District Court for the Western District of Virginia, alleging that Woolfolk knowingly possessed with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C.A. § 841(a)(1). An arrest warrant for Woolfolk was issued on the same date. At the time, Woolfolk was in the custody of Virginia authorities pending trial on state charges stemming from the December 15 arrest.[2] On January 9, 2003, the Government issued a federal detainer to the state authorities. The detainer specified that a federal arrest warrant had been issued against Woolfolk. The detainer also requested that "[p]rior to the subject's release from your custody, please notify this office at once so that we may assume custody if necessary." (J.A. at 13.) The detainer also was to be served on Woolfolk, but he contends that he received the warrant but not the detainer.

Although Woolfolk's state proceedings were terminated on April 10, 2003, Woolfolk was not released by the state authorities at that time.[3] The record contains no evidence as to why the state continued to detain Woolfolk after April 10. At a hearing before the district court on Woolfolk's motion to dismiss, Woolfolk contended that, after April 10, "there can be no other interpretation" of the record but that Woolfolk was being held only because of the federal detainer.

---

[1]Although the record is unclear, Woolfolk apparently was taken into custody by Virginia authorities following this arrest. According to the limited record in this proceeding, Woolfolk was charged by Virginia with four violations of state law stemming from the December 15, 2002 arrest — driving under the influence, manufacture of a controlled substance, refusal, and driving on a suspended operator's license.

[2]Although we recognize that Virginia is a commonwealth, we use the familiar term "state" in lieu of "Commonwealth of Virginia."

[3]One of the charges against Woolfolk was nolle prossed on February 20, 2003. On April 10, 2003, Woolfolk was found guilty of the charge of driving on a suspended operator's license and was given a suspended sentence of ten days imprisonment. Also on April 10, the remaining two state charges were nolle prossed.

(J.A. at 22.) The district court responded, "[t]hat seems to be conceded, that the only thing keeping him in jail was a federal detainer." (J.A. at 22.) Woolfolk answered that question in the affirmative, and the Government did not respond. On appeal, however, the Government contends that Virginia failed, as an administrative matter, properly to process the termination of Woolfolk's state charges and therefore was holding him on the dismissed state charges instead of the federal detainer.

Although it remains unclear why Woolfolk remained in state custody, at some point, apparently after Woolfolk filed a state habeas claim, the Government became aware that Woolfolk was still in state custody even though no proceedings remained against him in the state system. At oral argument before the district court, the Government asserted that "[w]hen [Woolfolk's] situation was brought to [the Government's] attention, [it] brought him over federally and executed the complaint." (J.A. at 21.) This action occurred on July 10, 2003, when the Government executed its December 18 arrest warrant and brought Woolfolk before a magistrate judge for his initial appearance. On August 7, the federal grand jury indicted Woolfolk on one count of violating § 841(a)(1).

On August 22, Woolfolk filed a motion to dismiss the indictment, alleging that the delay between the filing of the complaint and arrest warrant and serving of the detainer and the indictment violated the Speedy Trial Act, 18 U.S.C.A. § 3161(b), and his Sixth Amendment rights to a speedy trial. The district court heard arguments on the dismissal motion and, on October 2, 2003, issued an order denying it. Woolfolk subsequently entered a conditional guilty plea, which reserved his right to appeal the district court's denial of the dismissal motion. Woolfolk was sentenced to sixty months imprisonment on March 12, 2004, and filed a timely appeal on March 18. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 1999).

II.

On appeal, Woolfolk contends that the Government's delay in indicting him violated both the Speedy Trial Act and the Sixth Amendment and that accordingly, the district court erred in failing to grant his motion to dismiss. We address each argument in turn.

### A.  Speedy Trial Act

We review the district court's factual findings on a motion to dismiss an indictment for clear error, but we review its legal conclusions de novo. *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003). The Speedy Trial Act provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such offense."[4] 18 U.S.C.A. § 3161(b). If the Government fails to comply with this requirement, the "complaint shall be dismissed or otherwise dropped." 18 U.S.C.A. § 3162(a)(1). We have interpreted this language to provide that the Government must charge a defendant by indictment or information within 30 days of his "federal arrest upon a federal charge" or face the prospect of dismissal. *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (quoting *United States v. Lee*, 818 F.2d 302, 305 (4th Cir. 1987)). The Act "is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982).

On appeal, Woolfolk argues that the provisions of the Speedy Trial Act were triggered on January 9, when the Government lodged a detainer against him with the state because, on that date, the Government had issued a complaint, served an arrest warrant, and lodged a detainer with the state. In the alternative, Woolfolk contends that the Act's 30 day time limit began on April 10, when the state concluded its prosecution but continued holding him, allegedly because of the federal detainer. The Government counters that Woolfolk was not subject to "federal arrest" or "federal custody on a federal charge," *see Thomas*, 55 F.3d at 148, until July 10, when the magistrate judge issued the temporary detention order. With July 10 as the starting

---

[4]Woolfolk contends that he was "arrested" within the meaning of § 3161(b) but does not argue that he was "served with a summons." 18 U.S.C.A. § 3161(b) (West 2000).

date, the Government notes, the August 7 indictment complies with the dictates of the Act.[5]

Woolfolk's contention that the protections of the Speedy Trial Act were triggered on January 9 is foreclosed by our holding in *Thomas*. In *Thomas*, state authorities were detaining the defendant on state charges when the Government filed a criminal complaint, secured an arrest warrant, and lodged the arrest warrant as a detainer with the state authorities. *Id.* at 147. Thomas remained in the custody of state authorities facing state charges for more than two years. *Id.* The state authorities concluded their prosecution, and the Government indicted Thomas within thirty days of the termination of the state prosecution. *Id.* We rejected Thomas's argument that the complaint, warrant and detainer activated the requirements of the Speedy Trial Act, finding that, when an individual is lawfully being held to answer to state charges, a "criminal complaint coupled with an unexecuted arrest warrant and a federal detainer" do not trigger the Act. *Thomas*, 55 F.3d at 148. *See also Lee*, 818 F.2d at 303 (finding that the Act requires a federal arrest upon a federal charge and rejecting defendant's argument that filing of complaint, arrest warrant and detainer on individual being held in state custody on state charges constituted a federal arrest on a federal charge).[6] Accordingly, under the binding precedent of *Thomas*, the Government's filing of a complaint, serving of an arrest warrant, and lodging of that warrant as a detainer on January 9, while Woolfolk was in state custody answering to state charges, did not activate the provisions of the Speedy Trial Act.

---

[5]The district court found that Woolfolk was never in federal custody before his indictment. This conclusion is erroneous because, at a minimum, Woolfolk was in federal custody as of July 10, 2003 when the arrest warrant was executed and Woolfolk was transferred to federal custody.

[6]The basis for the holding in *Thomas* and *Lee* is the notion of dual sovereignty, "which recognizes that 'the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible.'" *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982) (quoting *United States v. Wilson*, 657 F.2d 755, 767 (5th Cir. 1981). As another circuit has explained, "one sovereign's actions should not force the other sovereign to proceed with a prosecution before it is ready." *United States v. Benitez*, 34 F.3d 1489, 1493 n.1 (9th Cir. 1994).

Woolfolk's second argument, that the Speedy Trial Act's thirty-day time limit for filing an indictment began on April 10, when his state proceedings terminated but his detention continued, gives us some pause. Neither *Thomas* nor *Lee* specifically address that argument. In both of those cases, the federal indictment was filed within thirty days of the termination of the state proceedings. Here, the state proceedings terminated on April 10, but the federal indictment was not filed until August 7. In fact, we have found no caselaw that addresses the specific factual situation before us. A canvas of our caselaw in this area, however, does provide us guidance on how to proceed in this case. First, as *Thomas* makes clear, for the Act to apply, the defendant must be under "federal arrest" or be in "federal custody." The relevant question thus becomes whether an individual being held by state authorities is ever under "federal arrest" or in "federal custody." The answer, at least while a state has valid charges currently pending against an individual, is "no." We believe however, that in limited circumstances, this question can be answered in the affirmative. In *Iaquinta*, we cited, with approval, the following passage from a law review article:

> For this [thirty-day time] limit to commence, a person *must be held for the purpose of answering to a federal charge.* Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date of the time period is the date that the defendant is delivered into federal custody. However, *if the person is held in state custody at the request of federal authorities, the date of arrest by the state officers is controlling.*

*Iaquinta*, 674 F.2d at 267 (quoting Martoche, *The Federal Speedy Trial Act: An Introduction and Guide*, 4 Nat. Journal of Criminal Def. 295 (1978)) (emphases added). In *Lee*, we again quoted, with approval, the suggestion that "[f]or the time limit of the Act to commence a person must be held for the purpose of answering a *federal* charge." *Lee*, 818 F.2d at 304 (quoting *United States v. Shahryar*, 719 F.2d 1522, 1524-25 (11th Cir. 1983) (emphasis in original)). We then reiterated that "to the knowledge of this Court, [no] other Court [has] stated — that a federal complaint without federal arrest *or any restraint resulting from federal action* brings the combination of 18

U.S.C. §§ 3161(b) and 3162(a)(1) into play." *Id.* at 305 (emphasis added). Thus, *Lee* makes explicit that the provisions of the Speedy Trial Act can be triggered by something other than *actual* federal custody and federal arrest, i.e., "any restraint resulting from federal action." *Id.* Although *Lee* does not discuss the parameters of this language, we believe that a "restraint resulting from federal action," sufficient to trigger the time limits of the Speedy Trial Act, occurs when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges.[7]

The phrase "federal action," in our view, requires a showing that the Government knew or should have known that the defendant was restrained solely to answer federal charges. Permitting the Speedy Trial Act's provisions to apply whenever a state has concluded its prosecution but failed to notify the Government would be an undesirable result. Given the breadth of the Government's criminal prosecutions, and what must be the sheer number of federal detainers lodged with state authorities, to impose a form of strict liability upon the Government for actions taken by independent sovereigns would be detrimental to the administration of justice. Instead, the Speedy Trial Act's purpose is best served if its provisions are triggered in those instances where the Government has knowledge that an individual is being held by state authorities only to answer to federal charges. In such situations, we believe an individual would be subject to a "restraint resulting from federal action." *Id.*

Applying this rule to the facts before us, we believe a remand to the district court is necessary. First, it is unclear whether, after April 10, Woolfolk remained in state custody only to answer to federal charges. On remand, the district court should consider whether the state continued to hold Woolfolk because of the federal detainer, or because, as the Government alleges before this court, the state failed

---

[7]The language used in *Lee* is analogous to the "ruse" exception adopted in other circuits. *See, e.g.*, *United States v. Cepeda-Luna*, 989 F.2d 353 (9th Cir. 1993). Under the ruse exception, "Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act." *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994).

to process the termination of Woolfolk's state charges. Moreover, even if we assume that Woolfolk was being held by the state solely because of the federal detainer from April 10 to July 10, thus making him subject to a "restraint" during that period, it is not clear, on the facts as currently developed, that the restraint was a result of "federal action." The record does not show when the Government knew or should have known that Woolfolk was being held solely because of the federal detainer.

In sum, we must remand the case for the district court to determine when the Government knew or should have known that Woolfolk was being held by the state solely because of the federal detainer. If the Government knew or should have known before July 8, then the Government violated the Act, and Woolfolk's indictment should be dismissed.

### B.   Sixth Amendment Speedy Trial Rights

Woolfolk next argues that his Sixth Amendment rights were violated by the delay following the issuance of the federal detainer on January 9. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In order to prove a Sixth Amendment violation in this context, a defendant "must show first that the Amendment's protections have been triggered by 'arrest, indictment, or other official accusation.'" *Thomas*, 55 F.3d at 148 (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)).

If the Sixth Amendment protections apply, we must make "four separate [i]nquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."[8] *Doggett*, 505 U.S. at 651. In addition to being a factor, the first inquiry is also a threshold requirement, because "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval

---

[8]This four part balancing test was originally set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and is commonly referred to as the *Barker* balancing test.

between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* at 651-652 (quotation marks omitted). After the defendant makes this threshold showing, he "must . . . show on balance," that the four inquiries weigh in his favor. *Thomas*, 55 F.3d at 148.

Under *Thomas*, the filing of the detainer, warrant and complaint on January 9, 2003, triggered Woolfolk's Sixth Amendment speedy trial rights. *See Thomas*, 55 F.3d at 149 (holding that "the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment"). He was indicted on August 7, almost eight months later, and pleaded guilty on December 19, almost a full year after his Speedy Trial rights attached.

The Supreme Court has counseled that "postaccusation delay [is] presumptively prejudicial at least as it approaches one year." *Doggett*, 505 U.S. at 652 n.1. One year is the "point at which courts deem the delay unreasonable enough to trigger the *Barker* [i]nquiry." *Id.* The Supreme Court, however, has never offered guidance on what the phrase "postaccusation *delay*" encompasses, and in this case it is unclear whether the time from January 9 to December 19, or from January 9 to August 7, is the proper measure.[9] Even assuming, however, that the relevant period of "postaccusation delay" is the period from the serving of the detainer, arrest warrant, and complaint on January 9 to the filing of the indictment on August 7, we believe that Woolfolk has met the threshold *Barker* requirement. As one commentator explains, "it may generally be said that any delay of eight months or longer is presumptively prejudicial." 4 WAYNE R. LaFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 18.2(b)(2d ed. 1999) (quoting Joseph, *Speedy Trial Rights in Application*, 48 Fordham L. Rev. 611, 623 n.71 (1980)). Although the eight month threshold is a general rule and not a rigid requirement, *see United*

---

[9]Although Woolfolk's motion to dismiss seemed to target the delay from the serving of the detainer through his impending trial, before this court Woolfolk has centered his Sixth Amendment claim on the delay between the filing of the complaint, warrant, and detainer and his indictment, not between the indictment and trial or even the filing of the complaint, warrant, detainer and trial.

*States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (finding eight month delay was "substantial" but not "presumptively prejudicial" in "two-defendant, eleven-count case that involves multiple allegations of attempted murder"), given the fact that Woolfolk's case involves little complexity, we see no reason to deviate from that general rule here. Thus, regardless of whether the relevant period of postaccusation delay is from January 9 to August 7 or from January 9 to December 19, the postaccusation delay in this case was presumptively prejudicial and Woolfolk has satisfied the threshold *Barker* requirement.

Although Woolfolk has satisfied the threshold requirement, that fact by no means ends our *Barker* inquiry. We have previously found no Sixth Amendment violation in cases involving time periods much greater than that at issue here. *See United States v. Grimmond*, 137 F.3d 823, 827 (4th Cir. 1998) (thirty-five months); *Thomas*, 55 F.3d at 149-150 (two and a half years). At this stage in the analysis, we typically would examine the remaining *Barker* inquiries in order to determine if Woolfolk's Sixth Amendment rights were violated. On the record before us, however, we believe that a remand to the district court is more appropriate. The *Barker* inquiry is a "fact-intensive inquiry," *Cope*, 312 F.3d at 778, and, given the uncertainty regarding the cause of Woolfolk's detention after April 10, we believe that the district court is in the best position to conduct a full *Barker* analysis.

III.

For the foregoing reasons, we remand the case to the district court for further consideration of Woolfolk's Speedy Trial Act and Sixth Amendment claims.

*REMANDED*

MICHAEL, Circuit Judge, concurring in the judgment and concurring in part:

I concur in the judgment entered by the majority, which remands for further consideration of Curtis Woolfolk's Sixth Amendment and Speedy Trial Act claims. I also concur fully in the reasoning in part

II.B of the majority opinion, which deals with Woolfolk's claim that his speedy trial rights were denied under the Sixth Amendment. I respectfully disagree, however, with the majority's conclusion in part II.A that a federal detainer does not trigger Speedy Trial Act rights until "the Government has knowledge that an individual is being held by state authorities only to answer to federal charges." *Ante* at 8. I would have the district court analyze the Speedy Trial Act claim under a different standard — a standard that serves the Act's purpose of achieving the prompt disposition of criminal cases. Specifically, the Speedy Trial Act's thirty-day indictment clock should be triggered at the point when a state holds a prisoner under the sole authority of a federal detainer.

Woolfolk was locked up in a Virginia jail in December 2002 to await the disposition of state criminal charges. On January 9, 2003, the U.S. Marshal for the Western District of Virginia lodged with the Virginia authorities a detainer against Woolfolk that was based on a warrant for his arrest on federal drug charges. The document was entitled "DETAINER AGAINST UNSENTENCED PRISONER." J.A. 13. The detainer stated that "[t]he notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this detainer because the subject is not currently serving a sentence of imprisonment." *Id.* The government thus did not volunteer to extend Woolfolk any rights under the Interstate Agreement on Detainers Act, which gives a sentenced prisoner subject to a detainer the right to demand a prompt trial on the charges underlying the detainer, that is, a trial within 180 days. *See* 18 U.S.C. app. 2 § 2, art. 3. The detainer requested that the government be notified before Woolfolk was released so that it could assume physical custody. Woolfolk's state charges were disposed of on April 10, 2003, and he was then no longer subject to state custody. He was held in the state jail, however, until July 10, 2003, when he was finally picked up by the federal authorities. Woolfolk was indicted on federal charges on August 7, 2003. The question is whether he was being held solely to answer the federal charges after April 10, 2003. If he was, the government violated the Speedy Trial Act's requirement that he be indicted within thirty days after his arrest.

The Speedy Trial Act provides that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within

thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. § 3161(b). Our circuit recognizes that "[f]or the [indictment] time limit . . . to commence a person must be held for the purpose of answering [to] a federal charge." *United States v. Lee*, 818 F.2d 302, 304 (4th Cir. 1987) (internal quotation marks and citation omitted) (emphasis omitted). Assuming that all state charges against Woolfolk were disposed of on April 10, 2003, when he received a suspended sentence, there was no longer any valid state authority under which he could have been held. The Virginia authorities nevertheless continued to hold Woolfolk in custody. Thus, the only two possibilities are that (1) the state authorities held Woolfolk illegally, or (2) they detained him pursuant to valid federal authority (the detainer). The government maintains that a detainer like the one here serves to hold a defendant in custody once state grounds for detention have ended. The detainer thus functioned as a valid grant of federal authority to state law enforcement officials to hold the defendant on federal charges when, in the absence of the detainer, he would have been entitled to his release.

I will assume for this discussion that Woolfolk was not held on state charges after April 10. Woolfolk was "arrested . . . in connection with [the federal] charges," 18 U.S.C. § 3161(b), some time on April 10 because that was when the state began detaining him solely on the basis of the outstanding federal detainer. Woolfolk was "held for the purpose of answering [to the] federal charge," *Lee*, 818 F.2d at 304, after April 10 because there was no other purpose for which the state could have legally detained him. The majority avoids this conclusion by taking language from *Lee* and construing it narrowly to excuse the government from its responsibilities under the Speedy Trial Act. The majority begins by citing *Lee* for the proposition that "the provisions of the Speedy Trial Act can be triggered by . . . 'any restraint resulting from federal action.'" *Ante* at 8 (quoting *Lee*, 818 F.2d at 305). The majority gets around this language by saying that there was no federal action here. There was federal action, however, when the U.S. Marshal lodged a detainer with state authorities, authorizing them to keep Woolfolk in custody if state process ended. Once Woolfolk's custody on the state charges ended on April 10, 2003, his continued "restraint" in the state jail "result[ed] from federal action," specifically, the federal detainer.

The majority suggests that there can be no qualifying federal action unless the government somehow "knew or should have known that the defendant was restrained solely to answer federal charges." *Ante* at 8. The government might not have known that Woolfolk was being held pursuant to the federal detainer after April 10, but it knew enough (by reason of its own actions) to be responsible for his detention after that date. The government filed the detainer secure in the knowledge that the detainer would serve to hold Woolfolk in custody if the state charges against him were disposed of. The majority says, however, that we cannot charge a prisoner's detention to the government unless it knows that the detainer has kicked in. Otherwise, according to the majority, we would be "impos[ing] a form of strict liability upon the Government for actions taken by independent sovereigns." *Ante* at 8. Virginia did not reach its detention decision independently, however. The entire process began with federal action, the filing of a detainer, which authorized the state to continue custody on behalf of the federal government. The filing of the detainer was a conscious act, signifying the government's intention to authorize the state to act on its behalf. Because the government took the intentional step of authorizing the state to act on its behalf, the government would not be held strictly liable for some totally independent action taken by the state. If we do not charge the time Woolfolk was held under the federal detainer to the government, we allow the government to enjoy the advantages of the detainer system without taking any responsibility.

The majority also attempts to justify its knowledge rule on the basis of "the breadth of the [federal] Government's criminal prosecutions and what must be the sheer number of federal detainers lodged with state authorities." *Ante* at 8. I am willing to accept that there are a fair number of federal detainers lodged against unsentenced prisoners in state custody. But I also expect it is fairly rare for state authorities to fail to notify the federal government that a state prisoner subject to a federal detainer is about to be free of state custody. States have every incentive to provide timely notification. In light of the costs and responsibilities of housing prisoners, state jailers are no doubt eager to transfer the custody of a prisoner subject to a federal detainer at the earliest possible moment. It appears that Woolfolk fell through the cracks, and the question is whether the federal government must be held responsible for the delay in his indictment. The majority is correct to point out that "administration of justice" con-

cerns should be taken into account. But Congress has made the judgment, by its enactment of the Speedy Trial Act and the Interstate Agreement on Detainers Act, that justice is best served by prompt indictment and trial. There is no room to excuse the government for the delay when a defendant languishes in jail as a result of the government's detainer. I would have the district court determine on remand whether Virginia continued to hold Woolfolk solely because of the federal detainer. If it did, Woolfolk's Speedy Trial Act rights were violated, and the court should decide whether to dismiss the indictment with or without prejudice. *See* 18 U.S.C. § 3162(a).