**UNITED STATES of America Plaintiff–Appellee,**

v.

**Manuel FLOREZ, aka Manuel Flores Defendant–Appellant,**

**United States of America Plaintiff–Appellee,**

v.

**Jaime Ernest Moreno Defendant–Appellant,**

**United States of America Plaintiff–Appellee,**

v.

**Alfredo Garibay–Lara Defendant–Appellant.**

Nos. 01–30011, 01–30012, 01–30023.
D.C. No. CR–99–00048(JDS).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Decided Nov. 27, 2002.

Before CANBY, T.G. NELSON,* and KLEINFELD, Circuit Judges.

MEMORANDUM **

A jury convicted Alfredo Garibay–Lara, Jaime Moreno, and Manuel Florez on a second superseding indictment for conspiracy to distribute methamphetamine,[1] and for the use of a firearm in relation to a drug trafficking offense.[2] It also convicted Garibay–Lara on two substantive counts of distributing methamphetamine.[3] We affirm on all issues with the exception of Florez's conviction on Count IV, which we reverse.

A. *Speedy Trial Act Violation*

We review the district court's application of the Speedy Trial Act *de novo,* and we review the district court's findings of fact for clear error.[4]

The court arraigned Garibay–Lara on June 4, 1999, and Moreno on June 18, 1999, and arraigned Florez on a superseding indictment on November 30, 1999. The trial did not start until August 29, 2000. Assuming no exclusion of time, the seventy days in which to begin trial had passed as to all defendants.

The district court calculated that only thirty-seven days had elapsed on the defendants' Speedy Trial clock. The court based its conclusion on the facts that the

---

* Judge T.G. Nelson was drawn to replace Judge Politz. He has read the briefs, reviewed the record and listened to the tape of oral argument held on February 5, 2002.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 2.

2. 18 U.S.C. § 924(c).

3. 21 U.S.C. § 841(a)(1).

4. *United States v. Messer,* 197 F.3d 330, 336 (9th Cir.1999).

Speedy Trial Act does not begin to run until the arraignment of the last codefendant,[5] and that the ends of justice continuances by some of the codefendants stopped the clock.[6] The district court's analysis in its order filed August 16, 2000, was correct.

The appellants assert that the district court erred when it excluded time under § 3161(h)(7) from its speedy trial calculation because that exclusion of time was unreasonable. In pertinent part, § 3161(h)(7) states:

> The following periods of delay shall be excluded in computing the time.... (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

We evaluate whether a delay was reasonable or not by looking at the totality of the circumstances.[7] We first examine whether the delay was necessary to achieve § 3161(h)(7)'s purpose "to facilitate the efficient use of judicial resources by enabling joint trials where appropriate."[8] We also review the length of the delay,[9] and whether the defendant was prejudiced by the delay.[10]

■ A joint trial for a drug conspiracy is the type of efficient use of judicial resources § 3161(h)(7) encourages. Gari-

bay–Lara contends, though, that two of the delays—Gaona's ends of justice continuance and the delay based on the late arraignment of Esparza—were not necessary to achieve the purpose of § 3161(h)(7). He claims that because Gaona and Esparza both pled guilty before trial, the delays on their behalf were not necessary to try the conspirators in a joint trial. This assertion, however, confuses the purpose of § 3161(h)(7), i.e., to make a joint trial possible if appropriate, and the end result of delaying a trial. Simply because a delay does not result in a joint trial does not mean that a delay was improper. This case is not like *Messer* where the "delay did not increase the likelihood of a joint trial."[11] There was every reason to believe that a joint trial would be appropriate in this drug conspiracy case. We hold that this factor weighs in favor of the reasonableness of the delays attributed to all the defendants under § 3161(h)(7).

On the question of whether the delays prejudiced the defendants, we examine: (1) whether the delay harmed a defendant,[12] (2) whether a defendant requested severance,[13] and (3) whether a defendant was incarcerated during the delay.[14] Garibay–Lara contends the delays prejudiced him because the Government secured three witnesses during the delay.[15] While

---

**5.** The court based its ruling on 18 U.S.C. § 3161(h)(7), *Henderson v. United States,* 476 U.S. 321, 323 n. 2, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant."), and *United States v. Dota,* 33 F.3d 1179, 1183 (9th Cir.1994), *cert. denied,* 514 U.S. 1052, 115 S.Ct. 1432, 131 L.Ed.2d 313 (1995).

**6.** 18 U.S.C. §§ 3161(h)(8), 3161(h)(7).

**7.** *Messer,* 197 F.3d at 338.

**8.** *Id.* (quoting *United States v. Hall,* 181 F.3d 1057, 1062 (9th Cir.1999)).

**9.** *Id.*

**10.** *Id.* at 339.

**11.** *Id.* at 338.

**12.** *Id.* at 339.

**13.** *Id.* at 340.

**14.** *Id.*

**15.** This included: Tyler Stenerson, Dora Gaona, and Johanna Martinez.

it may be true that the Government secured these witnesses during the delay, there is no evidence that such was the purpose for the delay, and furthermore, the Government did not count on only those witnesses to prove its case. Other witnesses testified to many of the same facts. We note that this case is unlike *Messer* where during the delay a witness important to the defense died.

Further supporting the conclusion that there was no prejudice is the fact that none of the defendants either asked for a severance or protested that their Speedy Trial rights were being violated until just before the trial was to start.[16] Finally, although Moreno and Garibay–Lara were incarcerated while they waited for trial, and not out on bond, both were brought from state custody and would have been in jail anyway. Defendants have failed to show prejudice. Because of the complexity of this case and the lack of any factors such as those found in *Hall* or *Messer*, under the totality of the circumstances we hold that there was no violation of the Speedy Trial Act.

The other contentions of Appellants have no merit. We thus affirm the district court's holding that the Speedy Trial Act was not violated.

### B. Sufficiency of the Evidence

Moreno and Florez appeal the district court's denial of their Federal Rule of Criminal Procedure Rule 29 motion for acquittal under Count IV of the indictment for using or carrying a firearm in relation to a drug trafficking offense on or about the summer or winter of 1996. Their convictions were based on the theory that Moreno and Florez were guilty of the reasonably foreseeable crime of their coconspirator Garibay–Lara, who carried a gun at this time. On appeal, Moreno and Florez contend there was no proof that they were members of the drug conspiracy at the time charged.

We review a motion for acquittal under Rule 29 *de novo*, but we use the same test we would use to review a challenge to the sufficiency of the evidence.[17] "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [18]

■ The Government contends that we should affirm Florez's conviction because there is proof he was involved in the conspiracy in the middle part of 1997; it was therefore reasonable for a jury to conclude that Florez might have been guilty during the summer or winter of 1996. However, a defendant cannot be held liable for substantive offenses committed before he joined the conspiracy.[19] We conclude, therefore, that no rational trier of fact could have found that Florez was guilty of this offense based on the above facts, and reverse Florez's conviction on Count IV.

As to Moreno, however, a review of the record persuades us that there was sufficient evidence for a jury to conclude that he was a part of the conspiracy as of 1996. Some of that evidence was: (1) Garibay–Lara always carried a gun; (2) Moreno met Garibay–Lara's wife in Idaho in 1996;

---

16. We recognize that defendants are not required to request a severance and that this is only a factor to assess the totality of the circumstances.

17. *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072 (9th Cir.1995).

18. *Id.* at 1072–73 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original) (internal citations omitted).

19. *Levine v. United States,* 383 U.S. 265, 266, 86 S.Ct. 925, 15 L.Ed.2d 737 (1966).

(3) Moreno was transporting drugs to Idaho for Garibay–Lara; and (4) Garibay–Lara's wife testified that during the years 1995–1998, when she was involved with Garibay–Lara, Moreno, Carlos Garibay–Lara, and Garibay–Lara were involved in distributing methamphetamine in Montana. Therefore, we affirm his conviction on Count IV.

### C. *Mere Buyer Jury Instruction*

Florez contends the district court erred because it failed to instruct the jury that one could not be convicted of a drug conspiracy if the evidence showed only a buyer/seller relationship. We review *de novo* whether a defendant presented sufficient evidence to be entitled to an instruction on a theory of defense.[20] "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence."[21]

■ Florez proposed the following jury instruction: "Mere proof of the existence of a buyer-seller relationship is not enough to convict one as a coconspirator on drug conspiracy charges." That is a correct statement of our circuit's law.[22] Our review of the record, however, convinces us that there was no foundation in the evidence to support this theory of Florez's defense. There was overwhelming evidence that Florez became the major outlet for the drugs handled by the conspiracy. The evidence clearly indicates that large quantities of drugs were "fronted" to Flores. There was testimony that on occasion when the other conspirators ran out of drugs, they went to Florez to obtain small amounts for immediate use or sale. There

was also unrefuted testimony that, when Florez fell behind in his remittances, Garibay–Lara and Moreno went to Florez's house and "babysat" for four or five days while Florez dealt drugs and remitted proceeds to Garibay–Lara. There was no error. No witness described Florez as a *mere* customer and there was uncontradicted testimony that Florez "worked for" Garibay–Lara.

In light of this whole record, no rational jury could have concluded that the only relationship between Florez and the other conspirators was merely that of buyer and sellers. The jury was properly instructed on the requirement of an agreement to accomplish the illegal object of the conspiracy. Because there was no foundation in the evidence for the "buyer-seller" instruction, the general conspiracy instructions were sufficient.

### D. *Garibay–Lara's Sentence*

Garibay–Lara asserts that the district court erred at sentencing when it imposed a four-level enhancement for his alleged role as a supervisor. We review a district court's factual findings made at sentencing for clear error.[23]

■ Garibay–Lara asserts that the Government presented no evidence at trial that he was a "leader and organizer" of the conspiracy. However, the Presentence Investigation Report set forth several references to Garibay–Lara's leadership role: (1) he was a source for many dealers in the Billings, Montana region; (2) he transported drugs from other regions on numerous occasions; (3) he was known to carry guns in protection of drugs; and (4) one dealer

---

**20.** *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990).

**21.** *Id.*

**22.** *United States v. Lennick,* 18 F.3d 814, 819 (9th Cir.1994).

**23.** *United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir.1999).

**28**

said Garibay–Lara handled $1,000,000 for the organization. Based on this evidence, we cannot find that the district court's four-level enhancement was clearly erroneous.

We find no merit in Garibay–Lara's *Apprendi*[24] objection. *Apprendi* does not apply because the four-level enhancement did not increase Garibay–Lara's sentence beyond the statutory maximum.[25] Garibay–Lara also contends the district court erred in failing to depart downward in consideration of his status as a deportable alien. However, we may not review the district court's discretionary refusal to depart from the sentencing guidelines.[26] Finally, we find no merit in Garibay–Lara's contention that the district court was required to recommend, under the Inter–American Convention on Serving Criminal Sentences Abroad[27] and the Convention on the Transfer of Sentenced Persons,[28] that Garibay–Lara be allowed to serve out his sentence in Mexico.

AFFIRMED as to appellants Garibay–Lara and Moreno, REVERSED in part as to appellant Florez, and REMANDED for entry of an amended judgment as to appellant Florez.

**24.** *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**25.** *See United States v. Panaro,* 266 F.3d 939, 954 (9th Cir.2001).

**26.** *United States v. Tucker,* 133 F.3d 1208, 1214 (9th Cir.1998).

**27.** Organization of American States Treaty A–57, June 9, 1993.

**28.** Council of Europe, European Treaties, Strasbourg, 21 .III.11983.