**UNITED STATES of America,
Plaintiff,**

v.

**Barton Joseph ADAMS, and Josephine
Artillaga Adams, Defendants.**

**Criminal No. 3:08–CR–77.**

United States District Court,
N.D. West Virginia,
Martinsburg.

April 15, 2011.

Alan G. McGonigal, Michael D. Stein, William J. Ihlenfeld, II, U.S. Attorney's Office, Wheeling, WV, John W. Sellers, Asset Forfeiture & Money Laundering Section, Washington, DC, for Plaintiff.

Brendan S. Leary, Federal Public Defender Office, Wheeling, WV, Nicholas J. Compton, Federal Public Defender Office, Martinsburg, WV, for Defendant Josephine Artillaga Adams.

### ORDER ON MOTIONS

JOHN PRESTON BAILEY, Chief Judge.

The above styled case is presently before the Court on defendant Barton Adams' Motion to Vacate [Doc. 571], Motion to Vacate Repatriation Order [Doc. 573], Motion to Vacate Protective Order [Doc. 576], Motion to Dismiss Counts 161, 1.63, and 164–169 [Doc. 580], Supplemental

Motion to Vacate Protective and Repatriation Order [Doc. 609], Motion for Release from Custody [Doc. 610], Motion to Dismiss on Speedy Trial and Sixth Amendment Issues [Doc. 624], Motion to Vacate Civil Contempt Order [Doc. 641], and Supplement to Sixth Amendment Speedy Trial Motion [Doc. 790]. The Court will address each motion in seriatim.

## I. Motion to Vacate Repatriation Order [Docs. 571, 573 [1]]

In defendant's Motion to Vacate Repatriation Order [Docs. 571, 573], defendant argues that this Court should vacate the Protective Order requiring that the defendant either repatriate funds to the United States Government or provide an accounting of those funds to the Court. In support of his argument, defendant asserts that requiring either the repatriation, or the accounting would violate defendant's Fifth Amendment right against self-incrimination. ([Doc. 571] at 4). In response, the Government argues that the Protective and Repatriation Orders [Docs. 25, 47] do not require the defendant to incriminate himself as he is not charged with receiving the funds—but with receiving the funds based on fraudulent billing. This Court agrees with the Government.

■ Defendant's first argument is that the requirement in the Civil Contempt Order for defendant to repatriate $1,655,-558.00 [2] [Doc. 100], violates defendant's Fifth Amendment right against self-incrimination. Defendant argues that his repatriation is somehow a forced admission of wrongdoing. This Court disagrees and finds that such an argument misconstrues

the basis of defendant's criminal charges. In the criminal case, there is no issue as to whether the defendant *received* the funds—but only whether he was *entitled* to them. In fact, the Protective Order [Doc. 25] was issued simply to ensure that the assets would be available to the Court should the defendant be found guilty of healthcare and/or other fraud, and thereby found to be not entitled to the funds. (See *Id.*). Thus, the disclosure of <u>where</u> the funds are (or the production of them to the United States Marshals Service) does not require that the defendant admit guilt (i.e. that he was not entitled to receive the funds).

Defendant's second argument is that "accounting for the transfer of funds is relevant" to the Government's case and, therefore, providing an accounting of those funds amounts to compelled self-incrimination because it helps the Government prove its case. Again, this Court disagrees as defendant has never been ordered to produce an accounting, but simply afforded the opportunity to do so in lieu of repatriation. In the Protective Order defendant was instructed to repatriate the funds held overseas [Doc. 25]; in the Repatriation Order [Doc. 47], the Court found that defendant had until December 15, 2008 to either repatriate the funds or provide an accounting as to what happened to the funds held outside the United States [Doc. 47]; and in the Civil Contempt Order [Doc. 100], the Court found that defendant had failed to either repatriate the funds, or provide an accounting. In fact, defendant has never been *required* to pro-

---

1. Documents 571, and 573 are identical.

2. The forfeiture allegation in the Second Superseding Indictment states: "the Grand Jury further finds that the defendants transferred, directly or indirectly, at least two million, six hundred thirty five thousand, thirty-three ($2,635,033) dollars constituting health care

fraud proceeds to foreign bank accounts controlled by defendants BARTON JOSEPH ADAMS and JOSEPHINE ARTILLAGA ADAMS." ([Doc. 409] at 45). This Court in the March 19, 2009 civil contempt hearing, however, only found clear and convincing evidence that $1,655,558.00 was held in foreign accounts.

vide an accounting of the funds the Court found are being held outside the United States, but was merely granted the opportunity to provide such, an accounting to the Court after he told the Court that he was unable to produce the funds. (See [Doc. 47]). Thus, as there is no Order requiring the defendant to disclose an accounting of the funds [3] there cannot be an order compelling self-incrimination on such grounds. Accordingly, defendant's Motion to Vacate Repatriation Order [Docs. 571, 573] should be **DENIED.**

## II. Defendant's Motion to Vacate Protective Order [Doc. 576]

■ In defendant's Motion to Vacate the Protective Order [Doc. 576], the defendant argues the Protective Order issued by this Court should be vacated as the Protective Order expired fourteen days after its entry, and as the ex parte issuance of the Protective Order violated defendant's Fifth and Sixth Amendment rights. ([Doc. 576] at 1). The Government argues that the Protective Order did not expire fourteen days after its entry because it was a protective order issued <u>following</u> defendant's indictment; ([Doc. 771] at 3). The Court agrees with the Government.

In his motion, defendant notes that there are three relevant provisions of law: 21 U.S.C. § 853(e)(4)(A); 21 U.S.C.

§ 853(e)(1)(A); and 21 U.S.C. § 853(e)(2). Defendant's argument is essentially that because the Protective Order was applied for ex parte, it must have been submitted pursuant to 21 U.S.C. § 853(e)(2) [4], and thereby must have expired fourteen days after its issuance. The problem with this argument, as the Government points out, is that § 853(e)(2) is <u>only</u> applicable "when an . . . indictment has not yet been filed." Accordingly, the Protective Order (as noted in the order itself) was issued pursuant to 21 U.S.C. § 853(e)(4)(A), and did not expire fourteen days after its entry. (See [Doc. 25] at 1 (stating "pursuant to Title 21 U.S.C. § 853(e)(4)(A). . . .")).

■ Defendant's second argument is that because the Government applied for the Protective Order ex parte, and defendant was not given a "meaningful opportunity to be heard" ([Doc. 576] at 6), the order violated his Fifth and Sixth Amendment rights and is therefore void. This Court disagrees.

The two relevant provisions of law with regard to entry of the Protective [Doc. 25] and Repatriation [Doc. 47] Orders are 21 U.S.C. § 853(e)(4)(A); and 21 U.S.C. § 853(e)(1)(A).

21 U.S.C. § 853(e)(4)(A) provides as follows:

---

**3.** The Court also finds defendant's Fifth Amendment argument to be disingenuous in light of the fact that defendant initially sought a use immunity agreement with the Government, only to later back out of the arrangement, and make clear that a use immunity agreement would be insufficient motivation/protection for the defendant to provide the Government with an accounting of the funds.

**4.** (2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect

to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than fourteen days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

Pursuant to its authority to enter a pre-trial restraining order under this section, the court may order a defendant to repatriate any property that may be seized and forfeited, and to deposit that property pending trial in the registry of the court, or with the United States Marshals Service or with the Secretary of the Treasury, in an interest-bearing account, if appropriate.

21 U.S.C. § 853(e)(1)(A) provides as follows:

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of his section for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this subsection, . . . .

Here, pursuant to 21 U.S.C. § 853(e)(4)(A), this Court entered "a pre-trial restraining order . . . [ordering the] defendant to repatriate any property that may be seized and forfeited, and to deposit that property pending trial . . . with the United States Marshals Service . . ." ( [Doc. 25] at 1). Further, pursuant to 21 U.S.C. § 853(e)(1)(A), the Court entered a restraining order requiring defendant to either repatriate the sum found by the Grand Jury to be eligible for forfeiture, or to provide this Court with an adequate accounting of those funds. ( [Doc. 47] at 2; [Doc. 100] at 6). (*See* 21 U.S.C. § 853(e)(1)(A) stating that " . . . the court may enter a restraining order or injunction . . . or take any other action to preserve

the availability of property . . . for which criminal forfeiture may be ordered under this section . . ."). This Court acted, upon motion of the Government, to preserve the availability of those funds should the defendant be found guilty on the criminal charges.

The post-indictment protective order procedure found in 21 U.S.C. § 853(e)(1)(A) does not include any statutory requirement relative to notice, pre-trial hearing, or duration. *United States v. Gelb*, 826 F.2d 1175, 1176 (2nd Cir.1987) ("Congress appears to have provided no durational limitation to its reach short of the termination of the related criminal prosecution"); *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir.1998) ("Section 853(e)(1)(B) permits pre-indictment protective orders, but requires notice and an opportunity for a hearing by 'persons appearing to have an interest in the property.' It also requires that the court make findings similar/to those for issuing a preliminary injunction. Section 853(e)(1)(A), however, contains no such procedural requirements for post-indictment protective orders. And in *United States v. Moya–Gomez*, 860 F.2d 706, 729 (7th Cir.1988), we concluded that this omission was telling"); *United States v. Musson*, 802 F.2d 384, 386 (10th Cir.1986) ("It appears that Congress intended that a . . . [hearing relative to a forfeiture protective order is] required only when a restraining order is sought *prior* to an indictment.") (Emphasis in original). Thus, defendant's argument that he must be granted a "meaningful opportunity to be heard" ( [Doc. 576] at 6) prior to the entry of the protective order is based solely on his Fifth Amendment right to due process, and his Sixth Amendment right to counsel of his choice.

Defendant has presented this Court with no controlling law in this circuit which

finds any violation of due process or the right to counsel which results from following the statutory provisions. Additionally, the two cases cited by defendant to support his argument that a hearing on the post-indictment protective order was required, *United States v. Crozier,* 777 F.2d 1376 (9th Cir.1985), and *United States v. Jamieson,* 189 F.Supp.2d 754 (N.D.Ohio 2002) comport with this Court's actions in the above-styled case. In *Crozier,* the court applied Federal Rule of Civil Procedure 65 to require the district court to hold a hearing on its previously issued post-indictment *ex parte* order restraining the defendants from transferring property. 777 F.2d at 1384. The court found that due process required the district court to hold a hearing which allowed the defendants to challenge the restraining order. *Id.* In *Jamieson,* the court held: (1) Rule 65 applies to pre-indictment, but not post-indictment protective orders; (2) the defendant must request a hearing on the restraining order; (3) when evaluating defendant's challenge to the restraining order, the court must take the allegations of the indictment as true, and; (4) the burden is on the defendant to show that the assets sought to be utilized to employ counsel or otherwise support the defendant's financial needs are either exempt from the restraining order, or that "the grand jury erred in all or part of the forfeiture section of the indictment." 189 F.Supp.2d at 757. In the above-styled case, this Court held hearings on the protective and repatriation orders on December 9, 2008, and March 19, 2009. At those hearings, this Court took the allegations in the Indictment as true, and this Court found that defendant failed to carry his burden with regard to showing that the assets defendant refused to repatriate were either exempt for some reason from the protective and repatriation orders, or that the grand jury erred in all or part of the forfeiture section of the Indictment (from which the amount of money to be repatriated was drawn). Accordingly, this Court finds that a hearing—although not required by the statutory provisions, or the Fourth Circuit—was held, that the hearing comported with the dictates of due process, that the protective and repatriation orders are valid, and, therefore, defendant's Sixth Amendment right to counsel has not been denied.

Accordingly, as the Protective Order was valid upon its entry and remains valid, and as the hearings on December 9, 2008, and March 19, 2009, provided the defendant with an opportunity to be heard (although not mandated by the law in this circuit), the Court finds that entry of the Protective Order did not violate defendant's Fifth or Sixth Amendment rights, and defendant's Motion to Vacate the Protective Order [Doc. 576] should be, and hereby is, **DENIED.**

### III. Motion to Dismiss Counts 161, 163, and 164–169 [Doc. 580]

In defendant's Motion to Dismiss Counts 161, 163, and 164–169 [Doc. 580], the defendant argues that certain counts should be dismissed as the Government was required to either elect to pursue civil or criminal penalties against the defendant. The crux of the motion is that the new counts (161, 163, and 164–169) arise out of defendant's failure to comply with the Court's Protective and Repatriation Orders [Docs. 25, 47], and that because the Government sought to detain the defendant pursuant to civil contempt oh his actions—it cannot also seek criminal charges. In response, the Government argues that the statute allows the Court to impose both civil and criminal penalties and the Government (and the Court) is not limited to one or the other. ( [Doc. 649] at 1). This Court finds that Counts 161, 163, and 164–169 are properly based on conduct for which the defendant was not otherwise

punished, and, therefore, need not be dismissed.

Defendant notes in his motion, that 21 U.S.C. § 853(e)(4)(B) provides for the penalty for failure to comply with a protective order issued under the authority of 21 U.S.C. § 853(e)(4)(A). The statute states:

> (B) Failure to Comply—Failure to comply with an order under this subsection, or an order to repatriate property, under subsection (p) of this section, shall be punishable as a civil or criminal contempt of court, and may also result in an enhancement of the sentence of the defendant under the obstruction of justice provisions of the Federal Sentencing Guidelines ...

Defendant argues that because the penalty provision of the statute states "shall be punishable as a civil or criminal contempt of court" that the Government cannot pursue civil contempt and *also* pursue additional criminal charges against defendant based on the same actions. ( [Doc. 580] at 3). The defendant notes that if violation of the protective order constituted a separate criminal offense it "would not act as an enhancement under U.S.S.G. § 3C1.1 but would be grouped with other offenses of conviction under U.S.S.G. § 3D1.1 et sequitur." (*Id.*)

Defendant's arguments are interesting, but fail as the only reasonable interpretation of the statute. Initially, the Court heard oral argument on this issue at its February 25, 2011 hearing. The Court inquired of both sides about the statutory construction. The Court has reviewed the statute and other relevant authority and finds that because the additional counts do constitute separate criminal offenses *in this case*, the Government properly charged them as additional offenses in the Second Superseding Indictment.

When drafting a statute, Congress has to be careful that its meaning is well conveyed. The fact that Congress stated, "may also result in an enhancement of the sentence of the defendant under the obstruction of justice provisions of the Federal Sentencing Guidelines ..." does not mean that an enhancement is the only possible result when a defendant fails to comply with the protective order. The statute uses the term "may result" not "may only result." Further, the Court has considered the facts as alleged in the Second Superseding Indictment and finds that Counts 161, 163, and 164–169 are not merely based on a "failure to comply" with the Protective Order, but an active plan to obstruct the Protective Order.

The Second Superseding Indictment charges the defendant with the following acts:

161: criminal contempt by intentionally filing an accounting with the Court which specifically omitted from the accounting "the fact that during the period between October 28, 2008 and December 3, 2008, the defendant transferred at least ninety-one thousand, nine hundred ($91,900) dollars from his Hong Kong bank into accounts that he and his wife controlled at the HSBC bank in the District of Columbia." ( [Doc. 409] at 31).

163: conspiracy to obstruct justice by conspiring to "prevent and attempt to prevent forfeiture of proceeds of the scheme alleged in the criminal complaint ... by hiding transferring, dissipating, and unlawfully using criminally derived proceeds." ( [Doc. 409] at 34).

164–169: obstruction of justice by "participating in each financial transaction listed below, for the purpose of preventing and attempting to prevent forfeiture of proceeds of the scheme alleged in the criminal complaint ..." ( [Doc. 409] at 42).

Thus, the Court is faced—not with allegations that the defendant simply "failed to comply" with the Protective Order is-

sued by this Court, but that the defendant and his co-defendant actively sought to obstruct this Court from gaining control over the funds governed by the Protective Order. Were the Court to accept defendant's interpretation of the statute, an entry of a protective order would prevent the Government from prosecuting defendants for other acts of contempt or obstruction relating to those funds. The Court is unwilling to ascribe such a restrictive interpretation to the statute. Accordingly, this Court finds that defendant's Motion to Dismiss Counts 161, 163, and 164–169 [Doc. 580] should be **DENIED.**

## IV. Defendant's Supplemental Motion to Vacate Protective and Repatriation Order [Doc. 609]

Defendant's Supplemental Motion to Vacate the Protective and Repatriation Order [Doc. 609] is substantially the same as defendant's Motion to Vacate the Protective Order [Doc. 576]. The difference in the two motions appears to be that in the second motion, counsel argues that the maximum fraud proceeds subject to repatriation is $48,448.73. ( [Doc. 609] at 8–9). Defendant arrives at this amount by extrapolating the sum from individual counts charged in the Indictment. (*Id.*) The Government, in response, argues that the relevant finding of the Grand Jury is the total amount of the proceeds of defendant's violations of Title 18 §§ 1341, 1343, and 1347. This Court agrees with the Government.

The Forfeiture Allegation of the Indictment states: "the Grand Jury finds [at least two million, two hundred fifty thousand, six hundred-fourteen dollars and thirty-one cents ($2,252,614.31) ] is the amount of the proceeds of the defendant's violations of Title 18 §§ 1341, 1343, and 1347." ( [Doc. 19] at 28 [5]). Accordingly,

as there is proper basis in the Indictment, based on the findings of the Grand Jury, as to the amount to be forfeited should defendant be convicted of the criminal charges; there is also a proper basis for the amount ordered to be repatriated by the Protective Order [Doc. 25].

Based on the above, the Court finds that defendant's Supplemental Motion to Vacate the Protective and Repatriation Order [Doc. 609] should be, and hereby is, **DENIED.**

## V. Defendant's Motion for Release from Custody [Doc. 610]

In defendant's Motion for Release from Custody [Doc. 610], he argues that he should be released from custody because he has "taken all steps available to him in a good faith effort to purge himself of the contempt." ( [Doc. 610] at 1). Defendant argues that he has attempted to compile complete records from various financial institutions with the intent to provide the Government with the accounting subject to a use immunity agreement. ( [Doc. 610] at 7). At this Court's hearing on February 25, 2011, counsel for defendant represented to this Court that defendant was now unwilling to provide the Government with an accounting and that he would not accept any use immunity agreement with the Government. At the hearing, the Government was directed to respond to defendant's motion [Doc. 610].

The Government, in its response, argues that defendant's motion is now moot because substantial compliance (which defendant argued he was attempting to perform) is now no longer a possibility. Further, as an attachment to its response, the Government provided a letter from counsel for defendant which states: "Docket

---

5. The amount contained in the Second Superseding Indictment is $3,724,721.00 ( [Doc. 409] at 44). The only indictment in existence

at the time the Protective Order was issued, however, was the original Indictment [Doc. 19].

610 has lost almost all of its substance saving only the argument that substantial compliance can't be rendered due to self-incrimination issues." ( [Doc. 771–1] at 1). The Court has addressed the self-incrimination issues above (See (I), *supra*), and the Court finds that defendant's Motion for Release From Custody [Doc. 610] should be **DENIED** as **MOOT**.

## VI. Motion to Dismiss on Speedy Trial and Sixth Amendment Issues [Doc. 624], and Supplement to Sixth Amendment Speedy Trial Motion [Doc. 790]

Defendant argues in his Motion to Dismiss on Speedy Trial and Sixth Amendment Issues [Doc. 624] that there was unreasonable delay in adding Ms. Adams as a codefendant and, therefore, the delay resulting from the addition of Ms. Adams as a codefendant is not excludable pursuant to 18 U.S.C. § 3161(h)(6), and the late addition of Ms. Adams to the case violates his Sixth Amendment right to a speedy trial. [Doc. 624]. Additionally, defendant filed a Supplement to Sixth Amendment Speedy Trial Motion [Doc. 790], in which he argues that the Government intentionally delayed in adding Ms. Adams as a codefendant, and only added her as a codefendant when the defendant failed to enter a plea agreement with the Government. (*Id.*) In response to the first motion, the Government argues that there were new events which resulted in the filing of the Second Superseding Indictment, and the addition of Ms. Adams to the case. Accordingly, the Government argues, the delay in adding Ms. Adams was justified, and there has been no statutory or constitutional speedy trial violation.

### A. Procedural History

Barton Adams was initially charged by a complaint filed on or about September 30, 2008. [Doc. 1]. An indictment was returned against Barton Adams on or about November 18, 2008. [Doc. 21]. Trial was set for January 21, 2009. [Doc. 32]. On December 3, 2008, defendant Barton Adams moved to continue the trial. [Doc. 39]. On December 10, 2008, the Court granted Barton Adams' motion to continue the trial and set a new trial date of March 31, 2009. [Doc. 47].

On March 13, 2009, the Court continued the trial date set for March 31, 2009. [Doc. 86]. On March 17, 2009, a Superceding Indictment was returned against Barton Adams. [Doc. 94]. Arraignment on the Superceding Indictment was held on March 19, 2009. [Doc. 98]. Trial was set for July 7, 2009. [Doc. 100]. On May 27, 2009, Defendant Barton Adams filed a motion to continue the July 7, 2009 trial date. [Doc. 148]. On June 5, 2009, the Court granted the motion to continue and set the trial for November 2, 2009. [Doc. 161].

On October 8, 2009, counsel for Barton Adams filed a motion to continue the trial date. [Doc. 264]. By order entered October 15, 2009, the Court denied the motion to continue. [Doc. 275]. On October 20, 2009, counsel for Barton Adams renewed the motion to continue. [Doc. 289]. By order entered October 23, 2010, the Court granted the motion to continue the trial and set a new trial date of February 8, 2010. [Doc. 297].

On December 28, 2009, the trial Court granted a defense motion to have Barton Adams evaluated for competency to stand trial and vacated the trial date. [Doc. 332]. A Second Superceding Indictment was returned against Dr. Barton Adams on March 16, 2010. [Doc. 409]. This indictment added Josephine Artillaga Adams as a defendant. [Doc. 409]. Arraignment was conducted on April 1, 2010. [Doc. 419]. Trial was set for June 1, 2010. [Doc. 424].

The Second Superseding Indictment charges a substantial number of fraud

counts involving medicaid and/or medicare fraud billings. The Second Superceding Indictment also charges a substantial number of money laundering proceeds related to the funds received from alleged fraud involving medicaid and/or medicare fraud billings. The Second Superceding Indictment charges obstruction of justice relating to disposal of funds to Dr. Adams' wife. Counts 159, 160, and 162 charge Josephine Adams with money laundering of funds derived from activity on or about December 11, 2008 and November 24, 2008. Count 163 charges a conspiracy that is related to the fraud charges dating from October of 2008 to February of 2009. Count 164 charges obstruction of justice dating from December 2, 2008 through February 3, 2009.

On April 10, 2010, Josephine Adams filed a motion to continue the trial date. [Doc. 436]. That motion was granted and trial was set for August 23, 2010. [Doc. 444]. On June 6, 2010, Josephine Adams filed a motion to continue the trial date. [Doc. 473]. That motion was granted and trial was set for April 5, 2011. [Doc. 483].

### B. Standard of Review

■ The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), requires that a trial commence within 70 days from the date of filing and making public of the indictment. A defendant is entitled to a dismissal of the indictment unless trial is commenced within the time frame set out in 18 U.S.C. § 3161(c)(1). *Bloate v. United States,* —— U.S. ——, 130 S.Ct. 1345, 1346, 176 L.Ed.2d 54 (2010). Contained with 18 U.S.C. § 3161(h) are a number of time periods which are not counted toward the running of the speedy trial act. 18 U.S.C. § 3161(h)(6) addresses periods of delay resulting from the joinder of a codefendant. It provides as follows:

> (h) The following periods of delay shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time in which the trial of any such offense must commence:

> (6) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

■ There are four relevant areas of inquiry the Court should consider in determining whether there has been a violation of the Speedy Trial Act, or the Sixth Amendment:

> (1) Whether delay before trial was uncommonly long;

> (2) Whether the government or the defendant is more to blame for the delay:

> (3) Whether the defendant asserted his right to a speedy trial; and

> (4) Whether the defendant suffered prejudice as a result of the delay.

*Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

■ When a prosecution involves multiple defendants, the time excludable for one defendant under the Speedy Trial Act is excludable for all defendants. The statutory time frame set out in 18 U.S.C. § 3161 is tolled by motions to continue and pretrial motions made by a defendant and his or her codefendants, *United States v. Kellam,* 568 F.3d 125, 137 (4th Cir.2009). The Speedy Trial Act permits a reasonable period of delay when a defendant is joined to a codefendant for whom the time for trial has not run where no severance has been granted. *See United States v. Carey,* 746 F.2d 228, 230–31 (4th Cir.1984).

■ The Speedy Trial Act does not begin to run in multiple defendant cases until the last defendant is added. *United States v. Walker,* 1997 WL 358770 *1, *3 (4th Cir. June 30, 1997) (stating, "[I]n cases involving multiple defendants only one

speedy trial clock, beginning on the date of the commencement of the speedy trial clock of the most recently added defendant, need be calculated under 18 U.S.C. § 3161(h)(7). In this computation, a delay attributable to any one defendant is chargeable only to the single controlling clock. So long as the defendants in question are brought to trial within the seventy speedy trial days that began with the clock of the most recently added defendant and so long as any delay is 'reasonable,' the Speedy Trial Act is not violated.") (internal quotations omitted). However, an unreasonable delay in joining a defendant may result in a violation of the Speedy Trial Act. *United States v. Messer*, 197 F.3d 330, 338 (9th Cir.1999) (finding that "the proper test is whether the totality of the circumstances warrants a conclusion that the delay was unreasonable").

The Ninth Circuit has addressed the outer limit of a reasonable time frame for adding codefendants, and opined that ninety days to add a codefendant is *not* unreasonable. *United States v. Lewis*, 611 F.3d 1172, 1176–77 (9th Cir.2010). Similarly, the Fourth Circuit has held that a delay of nine days is not unreasonable. *United States v. Carey*, 746 F.2d 228, 231. More recently, the Fourth Circuit has held that there must be a delay of at least 8 months to trigger Sixth Amendment speedy trial issues. *United States v. Woolfolk*, 399 F.3d 590 (4th Cir.2005). The Fourth Circuit has found no Sixth Amendment violation, however, in cases where the delay was much longer than eight months. *See United States v. Grimmond*, 137 F.3d 823, 827 (4th Cir.1998) (thirty-five months); *United States v. Thomas*, 55 F.3d 144, 149–150 (4th Cir.1995) (two and a half years).

In his motion, defendant addresses both the Speedy Trial Act, and the Sixth Amendment. As the two claims have different standards, the Court will address each in turn.

### C. Speedy Trial Act

Defendant argues that the delay resulting from the addition of Ms. Adams as a defendant was "unreasonable" and, therefore, non-excludable under 18 U.S.C. § 3161(h)(6). It is undisputed that defendant was joined with Ms. Adams as a codefendant, the time for trial for Ms. Adams had not run, and no motion for severance had been granted. Accordingly, the only issue is whether the delay resulting from the addition of Ms. Adams was "reasonable". *See* 18 U.S.C. § 3161(h)(6).

■ Defendant asserts that the delay in adding Ms. Adams was unreasonable because the Government must have known of Ms. Adams' allegedly illegal acts by February of 2009. The defendant bases this assertion on the fact that the last charged 'act' of Ms. Adams took place in February of 2009. (See [Doc. 409]). This Court is not persuaded that the Government would have known immediately of Ms. Adams actions, nor that the Government would have been immediately aware of her alleged involvement in the conspiracy.[6] The defendant has presented this Court with no case that holds that a delay of one year to add a codefendant is unreasonable. The Court has reviewed the relevant law and finds that the proper inquiry is to determine given "the totality of the

---

6. In fact, based on pretrial representations of Ms. Adams' counsel, it appears her defense will be that she was not knowingly involved in the conspiracy. It is, therefore, not unreasonable to find that the Government would not have been immediately sure that Ms. Adams had knowledge that the transactions she was involved in were illegal. Without such information, the Government would have no reason to indict her.

circumstances," whether the delay was reasonable. *See Messer,* 197 F.3d at 338.

■■■ The Court will "first examine whether the delay was necessary to achieve § 3161(h)[ (6) ]'s purpose 'to facilitate the efficient use of judicial resources by enabling joint trials where appropriate.' We also review the length of the delay, and whether the defendant was prejudiced by the delay." *United States v. Florez,* 52 Fed.Appx. 23, 24–25, 25–26 (9th Cir.2002) (quoting *United States v. Hall,* 181 F.3d 1057, 1062 (9th Cir.1999)) (footnotes omitted).

■■■ First, the Court would note that currently the defendants are scheduled for a joint trial and that this Court has denied defendant's motion to sever, the above-styled case is extremely complex and involves mail fraud, health care fraud, wire fraud, tax fraud, tax evasion, money laundering, obstruction of justice, money laundering conspiracy, and conspiracy to obstruct justice. (See [Doc. 409] ). Given the fact that the trial clock for neither defendant had run at the time the Second Superceding Indictment was filed, the fact that defendants are scheduled for a joint trial, and the fact that were the Court to grant separate trials substantial judicial resources would be wasted as the Government would be allowed (and has indicated it would seek to) to prove all the underlying criminal conduct related to the conspiracy charges in each trial, the Court finds that the delay was necessary to "facilitate the efficient use of judicial resources by enabling joint trials where appropriate."

Second, the Court will address the length of the delay. This is an interesting inquiry given the defendant's personal propensity to request and otherwise require the Court to grant continuances. The delay caused by the addition of Ms. Adams as a defendant was from June 5, 2010, to April 5, 2011 (a total of ten months). This Court finds that such a delay given the complexity of the above-styled case is reasonable. Further, the Court notes that the defendant himself has caused the following delays:

• On November 18, 2008, defendant was indicted in the Northern District of West Virginia. On or about February 4, 2009, defendant created a conflict with his three retained counsel: Barry Coburn, Jeffrey Coffman, and E. Leslie Hoffman III.

• On March 17, 2009, a Superseding Indictment was filed. On or about March 19, 2009, Barry P. Beck was appointed to represent the defendant. On April 7, 2009, the Court appointed Jay T. McCamic as co-counsel to represent the defendant. On April 13, 2010, the Court granted Barry P. Beck's Second Motion to Withdraw as counsel after defendant attempted to create a conflict by claiming Mr. Beck tried to poison him and filing ethics complaints against him with the West Virginia Bar.

• On or about April 13, 2010, the Court appointed John J. Pizzuti as co-counsel to represent the defendant. On or about August 19, 2010, defendant created an irreconcilable conflict between himself and both his counsel Jay T. McCamic and John J. Pizzuti. This Court, having no other recourse, allowed both attorneys to withdraw.

• On August 25, 2010, Stephen D. Herndon and Scott C. Brown were appointed to represent the defendant. On or about January 16, 2011, defendant once again attempted to create a conflict with counsel. That conflict was resolved by the Court.

• On or about March 29, 2011, and March 31, 2011, defendant once again has attempted to create multiple conflicts with his current counsel. Those conflicts have yet to be resolved.

Thus, during the time that this Court had granted a continuance pursuant to the motions of Barton Adams' codefendant, de-

fendant Barton Adams was actively engaged in creating conflicts which necessitated defendant getting new counsel—who necessarily had to get up to speed on the massive amount of discovery, witness statements, and other related matters. Further, at the hearing on February 25, 2011, counsel for defendant Barton Adams did not object to the continuance requested by the Government. Counsel represented to the court that there were roughly another 100,000 pages of discovery that had not yet been obtained by counsel for defendant, and that counsel for defendant would be unable to proceed with trial as defendant was unable to retain experts given the fact that payments for such experts had been suspended due to the lack of a judicial budget. Thus, given the totality of the circumstances, the Court finds that the length of the delay (ten months) was reasonable.

Third, the Court will address whether the defendant was prejudiced by the delay. The defendant has pointed to no specific prejudice. Although the defendant is currently incarcerated, he is incarcerated on a civil contempt charge and can purge himself of that contempt at any time he so chooses. Further, as noted above, in February of 2011, counsel for defendant had no objection to another continuance, had yet to obtain a substantial amount of discovery, and had no experts available for trial (which counsel for defendant noted were necessary to defendant's defense). Additionally, counsel for defendant—with defendant's agreement—at the February hearing requested that the defendant be sent for another mental evaluation.

Based on all the above factors, the Court finds based on the totality of the circumstances that the delay resulting from adding Ms. Adams as a defendant was reasonable and, therefore, excludable pursuant to the Speedy Trial Act. According, defendant's motions [Doc. 624, 790] shall be **DENIED** on Speedy Trial Act grounds.

### D. Sixth Amendment

█ In his motion, defendant also challenges the delay resulting from the addition of Ms. Adams as violating his Sixth Amendment right to a speedy trial. Defendant argues "The delay in adding a codefendant is more than the six months [7] necessary to require a Sixth Amendment analysis. It is greater than the ninety days analyzed by the Ninth Circuit." ( [Doc. 624] at 4). Defendant essentially argues that the alleged thirteen month delay [8] in indicting Ms. Adams triggers a Sixth Amendment speedy trial analysis. The Court is not convinced that the delay in the above-styled case triggers a such an inquiry. The Court finds that given the fact that the addition of Ms. Adams coincided with a superseding indictment against defendant Barton Adams, it is not clear that there was any resulting delay to defendant at all.

The two cases cited by defendant, *United States v. Persing*, 318 Fed.Appx. 152 (4th Cir.2008) (citing *United States v. Woolfolk*, 399 F.3d 590 (4th Cir.2005)) (eight month delay triggers Sixth Amendment inquiry), and *United States v. Lewis*, 611 F.3d 1172, 1176–77 (9th Cir.2010) (ninety days not unreasonable), are distinguishable. First, in *Persing*, the Court

---

7. The Court assumes that defendant is referring to the eight months the Fourth Circuit found in, *United States v. Woolfolk*, 399 F.3d 590 (4th Cir.2005), was required to trigger a Sixth Amendment speedy trial inquiry.

8. As noted above, the Court is not convinced that the Government would have known enough to indict Ms. Adams in February 2009. For the sake of argument, however, the Court is considering the delay in adding Ms. Adams to be a thirteen month delay.

cited to the rule established in *Woolfolk,* that a delay of at least eight months is required to trigger a Sixth Amendment inquiry. The Court in *Persing,* however, was presented With delays caused by "continuances sought by Persing and his codefendant." *Persing,* 318 Fed.Appx. at 154. The Court did not consider a delay in the *indictment* of the codefendant. Further, the Court did not consider—as is the case here—such a delay in indictment which did not cause a delay of the defendant's trial. As set forth in the procedural history above, during the alleged thirteen month delay defendant filed several motions to continue, as well as was sent for a psychological evaluation which delayed the trial. When the Second Superseding Indictment was issued (which added Ms. Adams) new charges were also added against defendant Barton Adams and he was re-arraigned and given a new trial date.

Likewise, in *Woolfolk,* the Court did not consider a delay in adding a codefendant. There, the Court considered a post-accusation delay where a defendant was not indicted on federal charges until eight months after federal detainer, warrant and complaint were filed (but where the defendant was being held in state custody on the federal detainer). Here, defendant's case was moving forward—and not ready for trial—during the alleged thirteen month "delay" in adding Ms. Adams. Thus, the Court finds that *Woolfolk* is likewise distinguishable. Here, the "delay" in adding Ms. Adams caused no delay at all to defendant's trial date.

Additionally, *Lewis* is distinguishable on its facts. The Court in *Lewis* found a delay of ninety days to add a codefendant was reasonable—but that delay was one *solely* resulting from the addition of the codefendant (the defendant's trial date was continued so as to allow the Government to obtain the presence of a codefendant). *Id.*

at 1176–77. Here, the delay was not a delay at all. During the time the Government allegedly 'delayed' in adding Ms. Adams as a codefendant, defendant Barton Adams' case was moving forward.

■ The Court has discussed above, however, there was a delay that resulted from the continuance requested by Ms. Adams after her addition as a codefendant. That delay amounted to a total of ten months. The Court will now consider whether the delay caused by the addition of Ms. Adams amounts to a violation of defendant Barton Adams' Sixth Amendment right to a speedy trial. There are four relevant areas of inquiry the Court should consider in determining whether there has been a violation of the Speedy Trial Act, or the Sixth Amendment:

(1) Whether delay before trial was uncommonly long;

(2) Whether the government or the defendant is more to blame for the delay:

(3) Whether the defendant asserted his right to a speedy trial; and

(4) Whether the defendant suffered prejudice as a result of the delay.

*Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

First, the Court will consider whether the delay of ten months was uncommonly long. The Court finds that it was not. Although the Fourth Circuit has indicated that a delay of eight months would trigger a Sixth Amendment inquiry, the Fourth Circuit has also found delays of much longer than eight months to be constitutional. *See United States v. Grimmond,* 137 F.3d 823, 827 (4th Cir.1998) (thirty-five months); *United States v. Thomas,* 55 F.3d 144, 149–150 (4th Cir.1995) (two and a half years). Here, the trial of defendant Barton Adams was purportedly delayed by ten months. The Court must look, however,

to the facts and procedural history of the case. At the time Ms. Adams was added as a codefendant, additional charges were added against defendant Barton Adams. Further, the above-styled case is highly complex and involves charges ranging from health care fraud to money laundering charges. Additionally, during the course of the ten month delay defendant was appointed new counsel due to his creation of an irreconcilable conflict with his then current counsel. As such, any delay caused by the addition of Ms. Adams should practically be limited to the months between her request for a continuance and the appointment of new counsel for Barton Adams (April 10, 2010–August 25, 2010), because after the appointment of new counsel his counsel had to get up to speed in the case. Thus, practically, the Court is left with a four month delay. Given all the facts and circumstances stated above, this Court finds that the delay was not uncommonly long.

Second, the Court will consider whether the Government or the defendant is more to blame for the delay. As defendant argues in his Supplemental Motion [Doc. 790], the Government made representations to defendant with regard to the non-prosecution of Ms. Adams as early as August of 2009. The Court is not as convinced as defendant that the posturing of the Government with regard to the non-prosecution Ms. Adams necessarily translates into the Government's awareness that Ms. Adams was likely culpable. The Court will, however, consider for purposes of this analysis that the Government was prepared to indict Ms. Adams at that time.

The Court is still left with the ten month delay resulting from Ms. Adams' motions to continue, which is effectively cut to four months because as of August 25, 2010—the defendant was no longer prepared to go to trial.[9] This Court will consider the issue of blame to be on both houses.

Third, the Court will consider whether defendant asserted his speedy trial rights. The Court has addressed this issue many times before in granting continuances in the above-styled case. Defendant has always asserted his speedy trial rights, whether or not defendant was at that time capable of putting forth a defense. The Court has found defendant's assertions to be *pro forma* objections. Nonetheless, the Court finds that defendant did at the time the Court granted a continuance assert his speedy trial rights.

Fourth, the Court will consider whether defendant has suffered prejudice as a result of the delay. The only evidence of prejudice that the defendant has presented to this Court is: "The defendant has been incarcerated since February of 2009—a total of 22 months. Interviews of witnesses reveal that several have difficulty with recall of events due to passage of time." ( [Doc. 624] at 4). The incarceration of defendant is a result of a civil contempt order. The defendant can purge himself of that contempt at any time he so chooses. The Court will, therefore, not consider defendant's incarceration prejudice.

Additionally, counsel's bald assertion that "several" witnesses have "difficulty with recall" is not sufficiently specific for this Court to find that defendant has suf-

---

9. The Court would also note that just prior to granting Ms. Adams' motion to continue at the April 13, 2010 hearing, the Court also appointed one new counsel for defendant Barton Adams. The Court is not prepared to find that due to the loss of one of defendant's counsel he was unable to proceed to trial as scheduled, however, the Court finds it impor-

tant to note that the withdrawal of counsel at that hearing was necessitated by the defendant filing ethics complaints and otherwise accusing his counsel of unsubstantiated and ludicrous acts. The Court finds that such acts on the part of the defendant weigh in favor of finding that the defendant actively caused delay to the trial of his case.

fered prejudice. The fact that witnesses may currently be having trouble recalling events does not show that their difficulty has resulted from the passage of the four months from April of 2010 to August of 2010. Further, the Court would note that at this Court's hearing on February 25, 2010, counsel for defendant stated that he had yet to obtain 100,000 pages of discovery and that he could not retain necessary experts for trial in April. At the hearing counsel for defendant did not object to a continuance until August of 2011. Based on the above, the Court finds that defendant has failed to show prejudice.

Accordingly, after considering all the factors relevant to a Sixth Amendment speedy trial inquiry, this Court finds that the delay resulting from the addition of Ms. Adams as a codefendant was reasonable and did not violate defendant's Sixth Amendment right to a speedy trial and defendant's defendant's motions [Docs. 624, 709] shall be **DENIED** on Sixth Amendment grounds.

The Court would note that it is concerned with the amount of time it is taking to get Mr. Adams to trial. The majority of the delays, however, have been necessitated by actions of the defendant himself. In fact, as recently as March 31, 2011, the defendant has attempted to alert the Court to another conflict of interest with his counsel which defendant himself has produced. The merits of that motion will be addressed in another order, but the Court would note that it is disingenuous at best for defendant to complain to the Court about the length of time it is taking to get the above-styled case to trial; while at the same time going out of his way to create conflicts that may necessitate the defendant yet again changing counsel. The United States Constitution is a wonderful document which governs this Court and ensures that all defendants receive a fair and speedy trial. Defendants cannot, however, rely on the Constitution as a weapon to bully this Court into dismissing a valid indictment.

The Court is unwilling to play a pawn in defendant's attempts to manipulate the legal system into some error. The Government has been judiciously moving forward with the case and has on several occasions been ready for trial when counsel for defendant has not. Defendant has been appointed new counsel so many times that this Court cringes to think how many judicial resources have been wasted. The defendant will not defeat this prosecution by bullying this Court into trying the case when defendant does not have a competent defense, nor will he bully this Court into dismissing the Indictment before trial due to defendant's own acts which have delayed the trial process in this case. This Court remains a neutral arbiter, and will ensure the proper administration of the law.

## VII. Motion to Vacate Civil Contempt Order [Doc. 641]

█ In defendant's Motion to Vacate Civil Contempt Order [Doc. 641], he argues that the Civil Contempt Order should be vacated as the Court failed to make express findings relative to the elements of civil contempt. In response, the Government argues that the Fourth Circuit does not require such express findings be announced on the record, and argues that the Court need only find clear and convincing evidence supporting a finding of contempt. ([Doc. 771] at 5–6). This Court agrees with the Government.

█ Specifically, defendant argues that this Court never made a finding in its March 19, 2009 hearing that all four elements required to establish civil contempt were shown by clear and convincing evidence. ([Doc. 641] at 4). The elements required to establish civil contempt are:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) that [the] movant suffered harm as a result. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F.Supp. 1397, 1405-6 (E.D.Va.1992)).

First, the Court would note that there is no requirement that the Court explicitly lay out its reasons on the record for finding civil contempt. As noted by the Government, Federal Rule of Civil Procedure 52(a)(3) provides: "The Court is not required to state findings ... unless these rules provide otherwise." Fed.R.Civ.P. 52(a)(3). So as to satisfy defendant, however, the Court will provide such findings now.

First, the Court found at the March 19, 2009 hearing, by clear and convincing evidence that there was a valid Order of this Court requiring the defendant to repatriate the sum of $2,252,614.31. The Court made that finding based on the fact that defendant and his counsel were present at the hearing on December 9, 2008 where the Court told defendant he had until December 15, 2008 to either repatriate the funds in accordance with the Protective Order [Doc. 25] or provide the Court with an accounting.

Second, the Court found at the March 19, 2009 hearing, by clear and convincing evidence that the Order of which defendant had knowledge (the Protective Order, and the Court's Order of Show Cause Hearing from the December 9, 2008 hearing), was in the Government's favor. The Court made that finding based on the fact that the Order(s) required the defendant to repatriate a sum of money and provide that money to the United States Marshals Service so that it would be available to the Government for forfeiture proceedings should the defendant be found guilty of the criminal charges.

Third, the Court found at the March 19, 2009 hearing, by clear and convincing evidence that the defendant by his conduct violated the terms of the Protective Order and Order of the Show Cause Hearing [Docs. 25, 47] and had knowledge of such violation. The Court made that finding based on the fact that the Order(s) directed the defendant to repatriate the sum of $2,252,614.31, or to provide the Court with an accounting, and at the hearing defendant admitted, through counsel, that he had failed to do either. The Court specifically found that there was clear and convincing evidence that there was a total of $1,655,588.00 unaccounted for that had been sent overseas and not repatriated. [Doc. 100].

Fourth, the Court found at the March 19, 2009 hearing, by clear and convincing evidence that the Government suffered harm as a result of defendant's failure to repatriate the monies, or otherwise comply with the Order(s). The Court made that finding based on the fact that the Government initially sought a protective order so as to ensure availability of the money for forfeiture proceedings, should the defendant be convicted on the criminal charges. Without compliance with the Protective Order, the money may be dissipated or otherwise placed outside the jurisdiction of the Court—and thereby made unavailable to the Government for forfeiture.

Accordingly, as the Court made all the proper findings pursuant to *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000), with regard to the Civil Contempt proceedings, the Court finds that defendant's Motion to Vacate Civil Contempt

Order [Doc. 641] should be, and hereby is, **DENIED.**

### CONCLUSION

Accordingly, based on the reasoning stated above, the Court **ORDERS** that defendant Barton Adams' Motion to Vacate [Doc. 571] should be, and hereby is, **DENIED;** defendant Barton Adams' Motion to Vacate Repatriation Order [Doc. 573] should be, and hereby is, **DENIED;** defendant Barton Adams' Motion to Vacate Protective Order [Doc. 576] should be, and hereby is, **DENIED;** defendant Barton Adams' Motion to Dismiss Counts 161, 163, and 164–169 [Doc. 580] should be, and hereby is, **DENIED;** defendant Barton Adams' Supplemental Motion to Vacate Protective and Repatriation Order [Doc. 609] should be, and hereby is, **DENIED;** defendant Barton Adams' Motion for Release from Custody [Doc. 610] should be, and hereby is, **DENIED;** defendant Barton Adams' Motions to Dismiss on Speedy Trial and Sixth Amendment Issues [Docs. 624, 790] should be, and here by are, **DENIED;** and defendant Barton Adams' Motion to Vacate Civil Contempt Order [Doc. 641] should be, and hereby is, **DENIED.**

It is so **ORDERED.**