**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4210

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

        v.

BOLARINWA ANDREW ADEYALE, a/k/a Bola,

              Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, Chief District
Judge.  (8:10-cr-00596-DKC-2)

Argued:  May 14, 2014              Decided:  July 29, 2014

Before WILKINSON, AGEE, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.   Judge Diaz wrote the opinion,
in which Judge Wilkinson and Judge Agee joined.

**ARGUED**: Robert Whelen Biddle, NATHANS & BIDDLE, LLP, Baltimore,
Maryland, for Appellant.   Margaret Amalia Moeser, OFFICE OF THE
UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.   **ON
BRIEF**: Booth M. Ripke, NATHANS & BIDDLE, LLP, Baltimore,
Maryland, for Appellant.   Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, Robert K. Hur, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

A jury convicted Bolarinwa Andrew Adeyale of one count of conspiracy to commit bank fraud, two counts of substantive bank fraud, and one count of aggravated identity theft for his participation in a scheme to defraud Bank of America. The district court sentenced Adeyale to 84 months' imprisonment.

Adeyale raises four issues on appeal. First, he contends that the government presented insufficient evidence to convict him of aggravated identity theft. Second, Adeyale argues that the district court erred in admitting certain summary testimony. Third, he contends that the district court erred in declining to dismiss at least one substantive bank fraud count as multiplicitous. Finally, he argues that the district court imposed a substantively unreasonable sentence. We affirm the district court's judgment.

I.

On appeal from a criminal conviction, we view the facts in the light most favorable to the government. United States v. Washington, 743 F.3d 938, 940 (4th Cir. 2014).

2

A.

Starting in late 2007, Adeyale and several coconspirators implemented a scheme to defraud Bank of America.[1] This scheme involved multiple steps. First, members of the conspiracy stole credit card convenience checks[2] from residential mailboxes in affluent Maryland and Washington, D.C. neighborhoods. Second, they paid local college students for access to their Bank of America accounts. The student account holders provided their account numbers, ATM cards, and PINs for this purpose. Third, Adeyale and his coconspirators recruited other student "runners" to deposit the checks into the compromised accounts and to withdraw the funds before the bank realized that the checks were stolen.

The government indicted Adeyale for his role in the scheme in September 2010. Subsequently, in a superseding indictment, the government charged Adeyale with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; six counts of substantive bank fraud, in violation of 18 U.S.C. § 1344; and

---

[1] We previously discussed this scheme in an appeal by one of Adeyale's coconspirators. See generally United States v. Otuya, 720 F.3d 183 (4th Cir. 2013), cert. denied, 134 S. Ct. 1279 (2014).

[2] A credit card convenience check is an instrument issued to a bank customer that is linked to a credit card as opposed to a checking account.

one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The conspiracy count was based on Adeyale's role in the overarching bank fraud scheme. Relevant to this appeal, two of the substantive bank fraud counts, Counts Five and Six, involved $5,000 and $600 withdrawals from a Bank of America account belonging to Courtney Smith.

Before trial, Adeyale moved to dismiss Counts Two through Six as multiplicitous because they involved withdrawals or deposits from the same bank account, which belonged to Smith. The government acknowledged that Counts Two and Three were multiplicitous, and those counts were dismissed. The district court reserved ruling on Adeyale's pretrial motion as to Counts Four through Six.

B.

At trial, the government presented testimony from other participants in the scheme, including Smith, Charles Richardson, and Madonna Campbell. Their testimony related to both the overarching scheme and specific transactions.

Richardson testified about his role in the scheme after Adeyale recruited him. In addition to acting as a runner, Richardson convinced several students to give him their Bank of America account information, ATM cards, and PINs so that the conspirators could access their accounts. He testified that he gave the cards and information to Adeyale, who paid Richardson

4

from the proceeds of the scheme. Richardson further explained that one of the student account holders whom he recruited was Courtney Smith. Richardson gave Adeyale Smith's account information, ATM card, and PIN. A few days later, Adeyale instructed Richardson to have Smith withdraw funds from her account. Richardson arranged for Smith to meet Adeyale, who then drove Smith, Richardson, and Campbell to a Bank of America branch. Richardson testified that Adeyale returned Smith's ATM card and directed her to make a withdrawal. Smith withdrew $5,000 from her account and gave the funds to Adeyale.

Smith's testimony confirmed that she gave Richardson her ATM card and PIN. She also testified that she made the $5,000 withdrawal from her account. But she stated, in contradiction to Richardson's testimony, that neither Adeyale nor anyone else returned her ATM card before she made the withdrawal. Instead, she stated that she obtained a new, temporary ATM card once inside the bank.

Like Richardson, Campbell testified that Adeyale recruited her. She explained that Adeyale gave her Smith's ATM card and PIN and instructed Campbell to make a withdrawal. Campbell stated that the ATM card did not work; other evidence, however, contradicted this statement and connected her to the $600 withdrawal. Campbell also testified that she later returned the card to Adeyale. In addition, she corroborated Richardson's

5

testimony that she accompanied Adeyale, Richardson, and Smith to the bank; Campbell confirmed that Smith made a withdrawal inside the bank and gave the funds to Adeyale.

The government also presented testimony from a Bank of America investigator, Dulcie Martin, who discussed various documents pertaining to the fraudulent transactions. Most important to this appeal, Martin described the withdrawals from Smith's account underlying Counts Five and Six: an October 30, 2008 withdrawal of $5,000, and an October 29, 2008 withdrawal of $600. Martin also connected Bank of America surveillance photographs to specific transactions. Based on those photographs, witnesses visually identified participants in the scheme conducting specific transactions. Multiple witnesses identified Campbell, for example, as the person associated with the $600 withdrawal.

Another government witness, Postal Inspector Julie Zachariadis, prepared summary charts of the government's evidence. One of the charts summarized the fraudulent transactions involving Smith's bank account. Over Adeyale's objection, Zachariadis testified that the $600 withdrawal was made using Smith's ATM card and PIN. The corresponding chart provided more detail and stated that Campbell made the $600 withdrawal.

6

After the government rested, Adeyale moved for judgment of acquittal on all counts. The district court denied the motion but directed the government to dismiss Count Four or Six because those counts involved withdrawals related to the same deposit. The government elected to dismiss Count Four. The court subsequently instructed the jury to consider Count One (conspiracy), Counts Five through Seven (substantive bank fraud), and Count Ten (aggravated identity theft).

The jury found Adeyale guilty of Counts One, Five, Six, and Ten, but not guilty of Count Seven. The court sentenced Adeyale to 84 months' imprisonment, consisting of concurrent 60-month sentences on Counts One, Five, and Six, and a consecutive 24-month sentence on Count Ten. The court also required Adeyale to pay restitution. This appeal followed.

II.

Adeyale raises several issues on appeal, arguing that the district court erred by (1) denying his motion for judgment of acquittal on the aggravated identity theft count; (2) admitting certain summary testimony; (3) declining to dismiss Counts Five and/or Six as multiplicitous, and (4) imposing a substantively unreasonable sentence. We review these issues in turn.

7

A.

We first consider Adeyale's argument that he was entitled to a judgment of acquittal on the aggravated identity theft count because the government presented insufficient evidence to support his conviction. We review de novo the district court's denial of Adeyale's motion for judgment of acquittal. See United States v. Royal, 731 F.3d 333, 337 (4th Cir. 2013), cert. denied, 134 S. Ct. 1777 (2014). In assessing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and will sustain the jury's verdict unless we conclude "that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

The aggravated identity theft statute imposes a mandatory consecutive two-year sentence on anyone who, "during and in relation to any felony violation enumerated in subsection (c) [including bank fraud and conspiracy to commit bank fraud], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A. To establish a violation of this provision, the government must show that the defendant knew the means of identification belonged to another person. Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009). But, as we held in another case involving the same scheme at issue here, the

8

government is <u>not</u> required to prove that the defendant possessed, transferred, or used the other person's identification without that person's consent.  See <u>United States v. Otuya</u>, 720 F.3d 183, 189 (4th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1279 (2014).

In rejecting Otuya's argument to the contrary, we explained: "To excuse Otuya's act of using another person's identification to defraud Bank of America of thousands of dollars simply because a coconspirator agreed to let him do so would produce an untenable construction of the statute and an unacceptable result."  See <u>id.</u>  Most circuits to address the issue have reached the same conclusion.  See <u>id.</u> (collecting cases and noting that "[o]ur holding . . . places us in accord with every circuit to have addressed the question").  <u>But see</u> <u>United States v. Spears</u>, 729 F.3d 753, 758 (7th Cir. 2013) (en banc) ("Section 1028A, we hold, uses 'another person' to refer to a person who did not consent to the use of the 'means of identification.'").

Adeyale asserts that <u>Otuya</u> does not control here because the government charged him with aggravated identity theft in a "unique way."[3]  See Appellant's Br. at 10.  In Adeyale's view,

---

[3] Alternatively, Adeyale asserts that we should revisit our holding in <u>Otuya</u> if we conclude that <u>Otuya</u> resolves the aggravated identity theft issue.  <u>Otuya</u>'s holding, in Adeyale's
(Continued)

9

the government "was explicit" that the predicate felonies supporting the aggravated identity theft charge were Counts Five and Six. See id. at 11. Adeyale argues that neither count can sustain his aggravated identity theft conviction. Count Five fails to do so, he asserts, because Smith used her own, new ATM card and PIN to make the $5,000 withdrawal. Therefore, Adeyale contends that he did not possess, transfer, or use Smith's identification during and in relation to that withdrawal. With respect to Count Six, Adeyale argues that the government did not present sufficient evidence that Campbell used Smith's means of identification to withdraw the $600. Without such evidence, Adeyale suggests that there was not sufficient evidence to connect him to the possession, transfer, or use of another person's means of identification during and in relation to the $600 transaction.

We find Adeyale's contentions unpersuasive. To begin with, the record belies Adeyale's suggestion that the government waived reliance on Count One. The government explicitly cited the conspiracy count as a predicate offense supporting the

---

view, depended on incorrect statutory interpretation. We do not reach the merits of Adeyale's argument, however, because we have no authority to overrule a decision issued by a previous panel. See McMellon v. United States, 387 F.3d 329, 332-33 (4th Cir. 2004) (en banc).

aggravated identity theft charge.  Specifically, the government charged that, between approximately October 29 and 30, 2008, Adeyale

> did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, that is, the name, personal bank account number and ATM/debit card issued to [Courtney Smith], during and in relation to a felony violation, that is, conspiracy to commit bank fraud . . . as charged in Count One[,] . . . and bank fraud . . . as charged in Counts Two through Seven.

J.A. 21.  In addition, the government alluded to the conspiracy count in its closing argument.

Count One amply supports Adeyale's aggravated identity theft conviction.  The government presented detailed testimony from multiple sources that Adeyale possessed and transferred Smith's means of identification during and in relation to the conspiracy.  And, as we have already explained with respect to the same scheme, the fact that Smith consented to the nefarious use of her personal information is of no import.  See Otuya, 720 F.3d at 189.

Nor do Adeyale's arguments about Counts Five and Six give us pause.  Regarding Count Five, we agree that the government's evidence indicates that Smith used her own ATM card to withdraw the $5,000.  And we acknowledge Smith's testimony that she used a new, temporary ATM card and PIN to make that withdrawal.  But we believe that a rational juror could still find, based on the

11

evidence at trial, that Adeyale possessed Smith's means of identification during and in relation to that withdrawal. The relevant statutory phrase is sufficiently broad. See United States v. Mobley, 618 F.3d 539, 549 (6th Cir. 2010) (explaining that "the 'in relation to' element [of 18 U.S.C. § 1028A] is met if the identity theft 'facilitates or has the potential of facilitating' that predicate felony"); see also United States v. Huerta-Loya, 496 F. App'x 307, 309 (4th Cir. 2012) (relying on Mobley and explaining that we have interpreted the phrase "in relation to" in a different statute "in an equally broad fashion"); cf. Smith v. United States, 508 U.S. 223, 237-38 (1993) (explaining, in interpreting a different statute, that the phrase "in relation to" is "expansive").

Adeyale's argument regarding Count Six fares no better. We recognize that the evidence presented at trial with respect to Campbell's role in the $600 withdrawal was inconsistent because Campbell testified that the ATM card did not work, thereby suggesting that she did not make the withdrawal using Smith's means of identification. But, viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence that Campbell made the withdrawal using Smith's ATM card and PIN. This is so based on, among other evidence, Smith's bank account statement and multiple witnesses'

12

identification of Campbell as the person depicted in a surveillance photograph associated with the $600 withdrawal.

In any event, even if we agreed with Adeyale's argument about Counts Five and/or Six, any error was harmless because of the overwhelming evidence of his guilt of aggravated identity theft during and in relation to the conspiracy count. See Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded.").

In sum, the government presented ample evidence to sustain Adeyale's aggravated identity theft conviction. Accordingly, we conclude that the district court did not err in denying Adeyale's motion for judgment of acquittal.

B.

Adeyale also argues that the district court erred in admitting summary testimony concerning the $600 withdrawal in Count Six.[4] We review a district court's evidentiary rulings for abuse of discretion and "will only overturn an evidentiary ruling that is arbitrary and irrational." United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011) (internal quotation marks omitted).

---

[4] On appeal, Adeyale does not challenge the government's use of summary testimony and summary charts in general. We therefore limit our discussion to the specific summary testimony that Adeyale challenges.

13

As relevant here, Inspector Zachariadis prepared a chart summarizing the government's evidence regarding the fraudulent deposits into and withdrawals from Smith's Bank of America account. Zachariadis testified, over Adeyale's objection, that there was a $600 withdrawal using Smith's ATM card and PIN on October 29, 2008. The chart itself went further and stated that Campbell made the withdrawal. Zachariadis stated that she based this portion of the chart on Campbell's and Richardson's testimony. She also stated that this portion of the chart was consistent with a photograph of the person, identified by others as Campbell, making the $600 withdrawal.

Adeyale asserts on appeal that there was insufficient evidence to connect the $600 withdrawal to Campbell's use of Smith's ATM card and PIN. In other words, Adeyale submits that the district court erred in admitting this evidence because it lacked proper foundation.[5]

We conclude that the district court did not abuse its discretion in admitting this evidence. Contrary to Adeyale's assertion, and as explained earlier when discussing the aggravated identity theft issue, other evidence adequately supported the challenged testimony. That evidence suffices to

---

[5] Adeyale also briefly asserts that this testimony "drew improper 'conclusions'" but does not appear to raise this as an independent basis for reversal. See Appellant's Br. at 19.

14

establish that the district court's evidentiary ruling was neither arbitrary nor irrational.

C.

Adeyale next contends that the district court erred in not dismissing Counts Five and/or Six because those counts are multiplicitous.[6]  We review the district court's legal conclusions on a motion to dismiss an indictment de novo and its factual findings for clear error.  United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005).

"'Multiplicity' is charging a single offense in more than one count in an indictment."  United States v. Mancuso, 42 F.3d 836, 847 n.11 (4th Cir. 1994) (internal quotation marks omitted).  As we have explained, "[t]he multiplicity doctrine finds its roots in the Fifth Amendment's Due Process Clause, which assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."  See United States v. Colton, 231 F.3d 890, 908 (4th Cir. 2000) (internal quotation marks omitted).  Relying on this

---

[6] We have previously noted that "[v]arious courts, including this one, have spelled multiplicity in its adjective form as 'multiplicious' and 'multiplicitous.'"  See United States v. Goodine, 400 F.3d 202, 207 n.6 (4th Cir. 2005).  In Goodine, we explained that "multiplicitous" is apparently the preferred spelling, see id., and we use that spelling here.

doctrine, Adeyale asks us to vacate his convictions on Counts Five and Six.

Section 1344 of Title 18 authorizes the government to prosecute each execution of a scheme to defraud a financial institution. See 18 U.S.C. § 1344; Colton, 231 F.3d at 908-09. Although the government may not prosecute every act that furthers a bank fraud scheme, it may charge multiple executions of a single scheme. Colton, 231 F.3d at 908-09. What constitutes an execution of a bank fraud scheme in a particular case depends on its underlying facts. See Mancuso, 42 F.3d at 848.

Established principles guide our analysis. In deciding whether acts constitute separate executions of a bank fraud scheme, we consider whether the acts are independent or are "integrally related" so that "one could not have succeeded without the other." See Colton, 231 F.3d at 909-10 (internal quotation marks omitted). An act constitutes a separate execution when it is "chronologically and substantively independent from the other acts charged as the scheme." Id. at 909 (internal quotation marks omitted). Conversely, evidence that a defendant "planned or contemplated" certain acts together may indicate that the acts are interdependent, and interdependent acts may not be charged separately. Id. (internal quotation marks omitted).

16

Our analysis in Mancuso is illustrative. There, the government charged the defendants with multiple counts of substantive bank fraud based on a scheme to divert checks associated with several contracts. Mancuso, 42 F.3d at 847. The government charged one count of substantive bank fraud for each diverted check. See id. In the defendants' view, the government should have only charged one count of bank fraud for each contract--not one count for each check. Id. We rejected the defendants' argument, explaining that "the diversion of a separately identifiable and discrete amount of money can, as here, be properly viewed as a separate execution of the defendants' scheme to defraud." Id. at 848.

The government in this case charged Adeyale with multiple counts of substantive bank fraud. Pertinent to this appeal, Count Five charged that Adeyale executed the scheme to defraud Bank of America based on the $5,000 withdrawal from Courtney Smith's account. Count Six charged that Adeyale executed this scheme based on the $600 withdrawal from Smith's account.

The district court held that Counts Five and Six constituted separate executions of the bank fraud scheme and thus denied Adeyale's motion to dismiss. The court determined that the scheme was to deposit stolen checks and withdraw the accompanying sums in a variety of ways. Accordingly, the district court found, one deposit and all of the withdrawals

17

pertaining to that deposit constituted an execution of the scheme. Because the court determined that the withdrawals in Counts Five and Six pertained to separate deposits, it denied Adeyale's motion as to those counts.

Adeyale maintains that "the execution of the scheme to defraud here was to obtain access to another person's bank account for the purpose of cycling money through that account." Appellant's Br. at 32. He thus contends that the use of each Bank of America account--not each deposit/withdrawal pairing-- constituted an execution of the scheme.[7] We disagree.

In making this argument, Adeyale attempts to analogize this case to United States v. Heath, 970 F.2d 1397 (5th Cir. 1992). There, the court held that a real-estate transaction involving two separate loans from the same financial institution constituted one execution of the scheme. Id. at 1402. Based on the underlying facts, the court determined that the two loans "were integrally related" and "one could not have succeeded without the other," as both loans were made for the purpose of facilitating the sale of a tract of land in Florida. See id.

---

[7] At oral argument, but not in his opening brief, Adeyale asserted that the record was unclear as to whether the withdrawals at issue in Counts Five and Six actually related to separate deposits. Adeyale has waived this argument by not raising it in his opening brief. See United States v. Leeson, 453 F.3d 631, 638 n.4 (4th Cir. 2006).

18

As we have explained, what constitutes an execution of a particular bank fraud scheme depends on the facts at issue. Heath does not involve similar facts to those presented here. Whereas in Heath one loan could not have succeeded without the other, the deposit/withdrawal pairings in this case were not related to each other in the same way.

Each deposit/withdrawal pairing was "chronologically and substantively independent from the other [deposit/withdrawal pairings] charged as the scheme." See Colton, 231 F.3d at 909 (internal quotation marks omitted). Put another way, the success or failure of one deposit/withdrawal pairing did not rely on the success or failure of another such pairing. We thus reject Adeyale's broader proposed unit of prosecution.

Moreover, Adeyale's argument mischaracterizes the nature of the overarching scheme. It is true that Adeyale and his coconspirators used multiple Bank of America accounts to further their fraud. But the scheme in no way depended on using a certain account for a particular deposit and its corresponding withdrawals. If a certain account was unavailable, the conspirators could simply deposit one or more stolen checks into a different account.

In sum, we discern no error in the district court's determination that, based on the facts of this case, each deposit and its corresponding withdrawals constituted an

19

execution of the scheme.  We therefore hold that Counts Five and Six are not multiplicitous.

## D.

Finally, Adeyale argues that his sentence is unreasonable in light of the 18 U.S.C. § 3553(a) sentencing factors.  We review a sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard.  United States v. Savillon-Matute, 636 F.3d 119, 122-23 (4th Cir. 2011).  A sentence within or below the applicable Guidelines range is presumptively reasonable.  United States v. Susi, 674 F.3d 278, 289 (4th Cir. 2012).

Adeyale does not assert that the district court committed procedural error, but he argues that the district court's below-Guidelines sentence is substantively unreasonable. Specifically, he contends that the court failed to account sufficiently for the need to avoid unwarranted sentencing disparities and for his personal history and characteristics. Adeyale also asserts that the district court placed too much emphasis on deterrence and not enough on Adeyale's allegedly low risk of recidivism.  The record does not support these arguments.  As explained below, the district court carefully considered each of these arguments and imposed a below-Guideline sentence that accounted for these concerns.

First, Adeyale's contention that his sentence resulted in an unwarranted sentencing disparity between him and his codefendants is without merit. The district court sentenced Otuya to 96 months' imprisonment and another codefendant to 48 months' imprisonment. Adeyale asserts that his sentence should have been lower than 84 months considering Otuya's allegedly more senior role in the conspiracy and his more severe conduct. Recognizing Adeyale's argument, the district court first explained that assessing any unwarranted disparity was difficult in this case because some coconspirators cooperated with the government, which may have influenced their resulting charges and sentences. The district court acknowledged that Adeyale did not initiate the scheme but explained that he was soon able to run the scheme for his own benefit. Based on these facts, the court imposed a sentence that was twelve months shorter than the sentence Otuya received.

Second, contrary to Adeyale's allegation, the district court sufficiently considered his personal history and characteristics. The court acknowledged Adeyale's post-conviction acceptance of responsibility, but it weighed his belated acceptance of responsibility against other sentencing factors. The court also recognized Adeyale's youth; it weighed his young age, however, against his serious role in the scheme,

21

the fact that he ran other fraud schemes, and the negative consequences of his actions on many people.

Third, we find unpersuasive Adeyale's contention that the district court placed too much emphasis on the deterrence of others and not enough on his allegedly low risk of recidivism. The district court properly considered deterrence. In addition, the court found that Adeyale's belated acceptance of responsibility demonstrated the deterrent value in imposing the 84-month sentence and hoped that the sentence would prevent Adeyale from repeating his criminal conduct.

Adeyale, at bottom, asks us to reweigh the § 3553(a) factors. This is outside of our purview. We "must defer to the trial court and can reverse a sentence only if it is unreasonable." United States v. Evans, 526 F.3d 155, 160 (4th Cir. 2008). Accordingly, we affirm the district court's sentence.

III.

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED

22